[Crim. No. 18028. In Bank. Feb. 20, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
LEOLA WILLIAMS, Defendant and Appellant.

## COUNSEL

Ruth Ohanessian, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow, Howard J. Schwab, Juliet H. Swoboda and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CLARK, J.**—Defendant appeals from judgment entered on a jury verdict convicting her of involuntary manslaughter. (Pen. Code, § 192, subd. 2.) We affirm the judgment.

After living together for two years, Elijah Turner decided one evening to leave defendant. When Elijah's brother Aubrey, defendant's sister Viola and Viola's boyfriend David arrived to help Elijah move, defendant told them to leave so that she could speak to Elijah privately.

According to Aubrey, defendant added that Elijah was "not going anywhere." A police officer testified Viola told him defendant called Elijah an obscene name and said he was "not going anywhere." At trial, however, Viola denied having made that statement.

Moments after stepping outside, Aubrey, Viola and David heard a "bumping" sound. Aubrey testified he reentered the apartment in time to see defendant stab Elijah in the chest as the victim gestured to her to stop. Viola and David contradicted Aubrey's claim that he reentered the apartment, but agreed with him that Elijah stumbled outdoors saying that defendant had stabbed him. The wound was fatal.

Defendant gave the following account: She told the others to leave because she was embarrassed by the necessity of asking Elijah for money to buy food and diapers for her infant daughter. Elijah replied that was solely her problem. Defendant responded, "If that is the way you feel about it, you are not taking anything out of here but your clothes." As he had on numerous prior occasions, Elijah then beat and kicked defendant, causing her to drop the baby. Defendant shouted at Elijah to stop, then grabbed a knife and "hit him with it," "to stop him from hurting me." Defendant did not intend to kill Elijah.

Defendant denied Aubrey witnessed the stabbing and also denied having made the following statements attributed to her by police officers testifying on rebuttal: Officer Howe testified that when he arrived at the scene defendant—kneeling over her victim—looked up and said, "I am the one that did it. I stabbed him. We were arguing, and I didn't want him to leave." Detective Pierce testified that when he asked where she stabbed the victim, defendant replied she did not know but that the detective should ask Aubrey because "He saw the stabbing when he entered the door."[1]

Defendant contends the misdemeanor-manslaughter instruction was prejudicially erroneous because "misdemeanor" was not defined.

■ In addition to instructions on first and second degree murder and voluntary manslaughter, as well as the right of self-defense, the jury was instructed: "Involuntary manslaughter is the unlawful killing of a human being without malice aforethought and without an intent to kill. A killing is unlawful within the meaning of this instruction if it occurred: (1) During the commission of a misdemeanor which is inherently dangerous to human life; or (2) In the commission of an act ordinarily lawful which involves a high risk of death or great bodily harm, without due caution and circumspection."

As defendant contends, this instruction must be supplemented by defining the inherently-dangerous-to-human-life misdemeanor or misdemeanors involved and by specifying what conduct under the evidence could constitute such misdemeanor or misdemeanors. (*People* v. *Failla* (1966) 64 Cal.2d 560, 564 [51 Cal.Rptr. 103, 414 P.2d 39]; *People* v.

---

[1] Offered the opportunity by the People to object to the officers' proposed testimony on "the ground of *Miranda* or whatever," defense counsel responded, "I will state for the record that I am not raising *Miranda* objections. I think the officers would testify that there was [*sic*] proper *Miranda* warnings and waivers, so I am not raising that."

*McManis* (1972) 26 Cal.App.3d 608, 614 [102 Cal.Rptr. 889]; *People* v. *Escarcega* (1969) 273 Cal.App.2d 853, 859-860 [78 Cal.Rptr. 785]; *People* v. *Lilliock* (1968) 265 Cal.App.2d 419, 427-430 [71 Cal.Rptr. 434]; use note to CALJIC No. 8.45 (1972 Rev.).)

In *People* v. *Failla, supra,* 64 Cal.2d 560, the jury was instructed that entering an apartment with intent to commit theft "or any felony" is burglary, and that such a specific intent is a necessary element of burglary. No other instructions on burglary were requested or given. This court held: "[W]here the evidence permits an inference that the defendant at the time of entry intended to commit one or more felonies and also an inference that his intent was merely to commit one or more misdemeanors or acts not punishable as crimes, the court must define 'felony' and must instruct the jury which acts, among those which the jury could infer the defendant intended to commit, amount to felonies. Failure to do so is error, for it allows the triers of fact to indulge in unguided speculation as to what kinds of criminal conduct are serious enough to warrant punishment as felonies and incorporation into the burglary statute." (*Id.,* at p. 564.)

In *People* v. *McManis, supra,* 26 Cal.App.3d 608, the Court of Appeal relied on *Failla* in holding that "An instruction defining misdemeanor within the context of a misdemeanor-manslaughter instruction must be given *sua sponte.*" (*Id.,* at p. 614.)

Defendant relied on *McManis* in moving for a new trial. The trial court admitted its error, but denied the motion on the ground it had not resulted in a miscarriage of justice—the position respondent adopts here.

"It is well established that ' "a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' (*People* v. *Bevins* (1960) *supra,* 54 Cal.2d 71, 78 [4 Cal.Rptr. 504, 351 P.2d 776], quoting from *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see also *People* v. *Newman* (1971) 5 Cal.3d 48, 54 [95 Cal.Rptr. 12, 484 P.2d 1356].)" (*People* v. *Gordon* (1973) 10 Cal.3d 460, 470 [110 Cal.Rptr. 906, 516 P.2d 298].)

This error was held harmless in the circumstances of *McManis,* the Court of Appeal there stating: "By its verdict of voluntary manslaughter,

the jury could only have concluded appellant *intended* to kill Sewell. The finding of voluntary manslaughter can be interpreted no other way. Since a verdict of *involuntary* manslaughter based on proper instructions could have been based only on a finding that appellant did *not* intend to kill Sewell . . . it is clear a proper involuntary manslaughter instruction could not have affected the jury's deliberations. Once the jury determined the crucial question of intent, an instruction defining misdemeanor would have been immaterial. And conversely, an instruction on the definition of misdemeanor could not have affected the decision on the question of intent. In short, the jury's verdict demonstrates it could not have reached its conclusion by speculating as to the meaning of misdemeanor." (26 Cal.App.3d at p. 616; citations omitted.)

Similarly, it is not reasonably probable that a result more favorable to defendant would have been reached in the absence of the error here. Although defendant does not suggest which misdemeanor or misdemeanors should have been defined, the evidence suggests battery. "A battery is any willful and unlawful use of force or violence upon the person of another." (Pen. Code, § 242.) Defendant admitted willfully using force and violence upon Elijah. The only question was whether she did so unlawfully or in lawful self-defense. Having been fully and properly instructed on self-defense, as defendant expressly conceded at oral argument, the jury resolved the issue against defendant. Therefore, the error was harmless.

Defendant next contends the trial court erred by refusing to permit her to cross-examine a witness concerning the remainder of an extrajudicial conversation partially disclosed by the People.

As has been stated above, Aubrey Turner testified he reentered the apartment in time to witness the stabbing. Defendant testified to the contrary, denying she made a prior inconsistent statement to Detective Pierce. On rebuttal, Detective Pierce testified that when he asked where she stabbed the victim, defendant replied she did not know but that the detective should ask Aubrey because "He saw the stabbing when he entered the door." On cross-examination, defendant asked Detective Pierce, "What was the whole conversation you had with Mrs. Williams?" The People's objection that the question called for *hearsay* was sustained.

■ Section 356 of the Evidence Code provides in pertinent part: "Where part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party . . . ."

Therefore, the hearsay objection was not sustainable. " 'In the event a statement admitted in evidence constitutes part of a conversation or correspondence, the opponent is entitled to have placed in evidence all that was said or written by or to the declarant in the course of such conversation or correspondence, provided the other statements have some bearing upon, or connection with, the admission or declaration in evidence and are not excluded by a rule of law *other than the hearsay rule.*' " (*People* v. *Ketchel* (1963) 59 Cal.2d 503, 536 [30 Cal.Rptr. 538, 381 P.2d 394], quoting *Rosenberg* v. *Wittenborn* (1960) 178 Cal.App.2d 846, 852 [3 Cal.Rptr. 459]; italics added.)

The People have shifted ground. Relying on *People* v. *Perry* (1972) 7 Cal.3d 756 [103 Cal.Rptr. 161, 499 P.2d 129], they now argue that defense counsel's question was objectionable, not because it called for hearsay, but because the remainder of the partially disclosed conversation may have been irrelevant to the portion introduced by the People.

■ Section 356 is indisputably " 'subject to the qualification that the court may exclude those portions of the conversation not relevant to the items thereof which have been introduced.' " (*People* v. *Perry, supra,* 7 Cal.3d at p. 787, quoting *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 67 [17 Cal.Rptr. 369, 366 P.2d 641]; Legis. Committee com. to Evid. Code, § 356.) "The rule is not applied mechanically to permit the whole of a transaction to come in without regard to its competency or relevancy . . . ." (Witkin, Cal. Evidence (2d ed. 1966) § 320, p. 283.)

In *People* v. *Perry, supra,* like this case, the defendant sought to introduce the remainder of a conversation partially disclosed by the People. However, unlike this case, the trial court in *Perry,* having found the first few lines of the transcribed statement irrelevant to the point at issue, merely directed the witness to eliminate extraneous matter from his reading of the transcript. Rejecting the defendant's contention that the entire statement was admissible under section 356 without regard to its relevancy, this court upheld the trial court's refusal to admit portions of the statement unrelated to the excerpt introduced by the People, noting that "[t]he record is devoid of any indication that counsel ever tried to introduce [the pertinent] portions of the statement." (7 Cal.3d at p. 787.)

Respondent contends that defendant should have asked a "narrower question encompassing only relevant matters." It is questionable whether

defendant had such an obligation on cross-examination, neither the objection nor the ruling having been based on irrelevancy.[2]

However, even assuming arguendo that the trial court erred, it is again not reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (Cal. Const., art. VI, § 13; Evid. Code, § 354; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Defendant unqualifiedly denied having told Detective Pierce that Aubrey witnessed the stabbing.[3] Therefore, she cannot persuasively argue that the context of the statement would have vitiated its apparent significance. Moreover, her defense of self-defense was undercut more deeply by, e.g., Officer Howe's testimony that defendant explained the stabbing to him by saying she was arguing with Elijah and did not want him to leave.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Richardson, J., concurred.

---

[2]"By [Defense Counsel]: [¶] Q. What was the whole conversation you had with Mrs. Williams? [¶] [Prosecutor]: Objection. Calls for hearsay. [¶] [The Court]: Sustained. [¶] [Defense Counsel]: Your Honor, he is offering part of the statement. [¶] [The Court]: Just a minute. Approach the bench, counsel. [¶] [The following proceedings were had at the bench.].[¶] [Defense Counsel]: Your Honor, he is offering a statement which is only part of a complete interrogation by the officer. It is a tail end of an interrogation, and I certainly think I am entitled to go into it since he brought it up. [¶] [The Court]: The only reason it was allowed was she said she didn't say such a thing. [¶] [Prosecutor]: That's right. [¶] [Defense Counsel]: She is entitled by means of cross-examination of this witness— [¶] [The Court]: The whole reason I let it go in is that she said specifically that this man was not in the room and she hadn't said so to the officer, and that he was not, in substance, telling the truth when he testified. And she said she did not tell this officer that. And I only let him testify to impeach her statement in that regard. [¶] [Defense Counsel]: My problem, Your Honor, is how can I cross-examine that particular statement when I wasn't present. The officer is the only one who was there. I can't delve into the total circumstances behind that statement unless I question the officer as to what she said prior to that statement. [¶] [The Court]: Objection sustained."

[3]"Q. Why did you tell Detective Pierce that later on that evening that Aubrey saw the stabbing? [¶] A. I never told no one that. Never. [¶] Q. You did not tell Detective Pierce that? [¶] A. I never told no one that. [¶] Q. Later on that evening, after you were placed under arrest for killing Eli? [¶] A. I never told no one that."