[Civ. No. 47455. First Dist., Div. One. Feb. 21, 1980.]

PATRICK KIME GALLAHER, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

668

**Counsel**

Serra, Perelson, Metcalf & Archuleta and J. Tony Serra for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Herbert F. Wilkinson, Deputy Attorney General, for Real Party in Interest.

## OPINION

**ELKINGTON, Acting P. J.**—Upon his arraignment in the superior court on a charge of murdering one Larry Rutherford, petitioner Patrick Kime Gallaher, pursuant to Penal Code section 995, moved to set aside the information. The stated ground was that he had been denied the right to cross-examine his principal accuser at the preliminary examination. Upon denial of the motion by the superior court, he sought relief from this court by the extraordinary writ of prohibition, a practice approved, in a proper case, by *Jones* v. *Superior Court* (1971) 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241], and *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304].

We issued an alternative writ for the purpose of inquiring into the validity of the superior court's ruling.

The relevant proceedings of Gallaher's preliminary examination, before a municipal court judge sitting as a magistrate, will reasonably be condensed to the following.

One Raymond Leader had become involved in the charged offense because of circumstances from which, at least arguably, he might have been deemed an accessory to it. (See Pen. Code, § 32.) At the preliminary examination's commencement it was represented by the prosecutor that Leader would be his witness, but *only* as to facts "leading up to the shooting" and a statement immediately thereafter made by Gallaher, after which "he is going to take the Fifth, . . ." The prosecutor continued, "I intend to ask no further questions of Mr. Leader other than that and I don't think that anything beyond that would be relevant." (Such a procedure would, of course, deny to Gallaher cross-examination of Leader on such otherwise relevant and material acts, declarations, conversations and events as might have happened chronologically, to have *followed* "the shooting.")

Gallaher through his attorney objected to the proposed procedure, saying that such a denial of cross-examination "would be offensive to *due process* and fair play," (italics added) and that "What went on afterwards is probative,...circumstantial, relevant and material and, respectfully, I would urge that the Fifth Amendment could not be exercised in such a fashion." No express ruling on the objection was made at the time; the magistrate simply saying, "All right. Thank you, gentlemen."

Thereafter Leader was called to the witness stand. He testified substantially as follows.

Earlier on the evening of the homicide he had been the driver of an automobile in which Gallaher and another were passengers. All had been drinking heavily. Larry Rutherford (later the victim) was the driver of another motor vehicle with one passenger. There had been cursing and threats of violence between the two cars' occupants, and more particularly between Gallaher and Rutherford. When the proprietor of the premises where the two vehicles were parked asked the men to leave, Gallaher stated "something to the effect that 'we are going to go down to the parking lot at the SP depot.'" Leader then drove his automobile to that location where Rutherford's car "cut in" ahead of him as he parked. The cursing and threats were renewed, and during their course Gallaher walked to the driver's window of the other vehicle. At that point Leader heard "a couple or three pops" after which Gallaher returned saying (as Leader *thought* he said), "I shot him." The direct examination thereupon ended.

Thereafter Leader was cross-examined by Gallaher's attorney on the above described events. But then the question, "You got the car in reverse and left the area?" was met with a prosecutorial objection that "this is beyond the scope of direct examination...." The magistrate commented, "The departure from the scene was not covered, to the court's recollection, on direct examination." And the witness stated: "[M]y lawyer has advised me to take the Fifth Amendment on anything past the shooting....He just told me anything past the incidents at the car, he said, 'You are to take the Fifth Amendment.' And so that's what I am doing."

The magistrate then ruled that the question improperly exceeded the scope of the direct examination, and he indicated further that the ruling would apply to all matters chronologically following the "shooting."

Then, addressing Leader, he said: "If there is any doubt about that, Mr. Leader, if there are any questions that are asked of you at this time by either of the attorneys which you feel would tend to incriminate you in any violation of the law, you do have the right under the Fifth Amendment to refuse to answer those questions on the grounds that they might so tend to incriminate you and you can exercise that right by merely indicating that you refuse to answer on the grounds that it might tend to incriminate you."

During the course of the discussion the magistrate's question—"[A]re you finished with cross-examination?"—was responded to by Gallaher's attorney: "Yes I am. I am finished, Judge, only because of the court's ruling."

■ "It is well established that the defendant at a *preliminary examination* has the *right* to examine and *cross-examine* witnesses for the purpose of overcoming the prosecution's case or establishing an affirmative defense." (Italics added; *Jones* v. *Superior Court, supra*, 4 Cal.3d 660, 667.) This right, at one's preliminary examination, is essential to the "due process of law" guaranteed by the Fourteenth Amendment. (*Jennings* v. *Superior Court, supra*, 66 Cal.2d 867, 875.) It is as critical as the right to cross-examine witnesses at one's trial, for at the preliminary examination also, it is the judicial responsibility "to weigh the evidence, resolve conflicts and give or withhold credence to particular witnesses." (*Jones* v. *Superior Court, supra*, p. 667.)

■ "It is well established that the scope of proper cross-examination may extend to the *whole transaction* of which the witness has testified, or it may be employed to elicit *any matter which may tend to overcome, qualify or explain the testimony given by a witness on his direct examination*." (Italics added; *People* v. *Dotson* (1956) 46 Cal.2d 891, 898 [299 P.2d 875]; *Marshall* v. *Marshall* (1965) 232 Cal.App.2d 232, 255 [42 Cal.Rptr. 686]; *People* v. *Swayze* (1963) 220 Cal.App.2d 476, 497 [34 Cal.Rptr. 5].) "'He can be cross-examined with respect to facts or denials which are *necessarily implied from the testimony in chief*, as well as with respect to facts which he expressly states.'" (*People* v. *Zerillo* (1950) 36 Cal.2d 222, 229 [223 P.2d 223], italics added.) And a "witness may be cross-examined as to any facts stated in his direct examination or *connected therewith*." (*People* v. *Bigelow* (1951) 104 Cal.App.2d 380, 387 [231 P.2d 881], italics added.) ■ The cross-examination "need not be 'confined to a mere categorical review of the matters, dates or times mentioned in the direct examination.'" (*Jennings*

v. *Superior Court, supra*, 66 Cal.2d 867, 877.) The rule appears to have particular application in criminal cases, not only where the witness is the defendant, but also where the witness, as here, is *"his accuser."* (*Jennings* v. *Superior Court, supra*, p. 877.)

The rule also has a statutory basis: "Where part of an act, declaration [or] conversation...is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party;...and when a detached act, declaration [or] conversation...is given in evidence, any other act, declaration [or] conversation...*which is necessary to make it understood may also be given in evidence.*" (Evid. Code, § 356; italics added.) Elaborating upon the statutory rule, the state's high court has said: ""In the event a statement admitted in evidence constitutes part of a conversation..., *the opponent is entitled to have placed in evidence all that was said...by or to the declarant in the course of such conversation...provided the other statements have some bearing upon, or connection with, the admission or declaration in evidence....*"" (*People* v. *Williams* (1975) 13 Cal.3d 559, 565 [119 Cal.Rptr. 210, 531 P.2d 778], italics added.)

■ We construe the foregoing criteria as providing, at least ordinarily, that when a prosecution witness testifies to facts tending to establish the guilt of one criminally accused, that witness may be cross-examined on *all* relevant and material matters preceding, concurring with, or following the criminal event, within his knowledge and reasonably related to the issue of guilt or innocence.

One situated as was Gallaher is under no duty to point out to the magistrate, or even to know, what evidence his continued cross-examination would elicit. "Questions on cross-examination...are largely exploratory, and it is unreasonable to require an offer of proof since counsel often cannot know what pertinent facts may be elicited." (*Tossman* v. *Newman* (1951) 37 Cal.2d 522, 525 [233 P.2d 1]; and see *People* v. *Jones* (1911) 160 Cal. 358, 364 [117 P. 176]; *Wheeler* v. *Wheeler* (1973) 34 Cal.App.3d 239, 242 [109 Cal.Rptr. 782]; *MacGregor* v. *Kawaoka* (1955) 132 Cal.App.2d 407, 409-410 [282 P.2d 130].) ■ And, as here: "Where...an entire class of evidence has been declared inadmissible or the trial court has clearly intimated that it will receive no evidence of a particular type or class, or upon a particular issue, an offer of proof is not a prerequisite to arguing on appeal the prejudicial nature of the exclusion of such evidence." (*Lawless* v.

*Calaway* (1924) 24 Cal.2d 81, 91 [147 P.2d 604]; and see *People* v. *Coleman* (1970) 8 Cal.App.3d 722, 729 [87 Cal.Rptr. 554].)

■ Following the shooting of Rutherford, and Gallaher's statement as recalled by Leader, "I shot him," there may have been and probably were\* other circumstances, or "acts," or "declarations," or "conversations" of Gallaher, concerning the "whole transaction" or "connected therewith," which had a tendency "to overcome, qualify or explain" (see *People* v. *Dotson, supra*, 46 Cal.2d 891, 898) Leader's testimony, or "to make it understood" (see Evid. Code, § 356), or at least having ""'some bearing upon, or connection with"'" its subject matter (see *People* v. *Williams, supra*, 13 Cal.3d 559, 565).

Such matters were patently a subject of cross-examinational inquiry by Gallaher. Denial of the right to such cross-examination was error of constitutional dimension.

We need not, and therefore do not, pass upon the parties' arguments whether Leader, by his voluntary, but partial, testimony concerning the murder charge against Gallaher had waived his claimed Fifth Amendment rights. Waiver, or no waiver, the magistrate's participation in, or acceptance of, the arrangement between Leader and the prosecution resulting in the loss of Gallaher's full right of cross-examination constituted prejudicial, and thus reversible error.

■ We observe further that when, due to *any reason* for which he is not accountable, one criminally accused is denied his right of cross-examination, "'he is entitled to have the direct testimony stricken from the record.'" (*People* v. *Manchetti* (1946) 29 Cal.2d 452, 461 [175 P.2d 533]; see also *People* v. *Barthel* (1962) 231 Cal.App.2d 827, 834 [22 Cal.Rptr. 599]; *People* v. *Abner* (1962) 209 Cal.App.2d 484, 489-490 [25 Cal.Rptr. 882]; Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, § 1199, pp. 1107-1108.) Gallaher made such a timely motion, which was denied.

---

\*Although unnecessary to our disposition of the case we note from the record that Leader, with his attorney present, had earlier made a carefully limited statement to the police referring in part to *some* of the shooting's *after*-events. The statement points up that there were further conversations between the two men in respect of the homicide, that Leader saw no firearm in Gallaher's possession before, during, or after the shooting, and that Gallaher had thrown something in a lake which Leader had reason to "assume" was a "Bulldog .44" pistol. (The homicide weapon was concededly a .38 caliber firearm.) The reasons for, and soundness of, the above discussed rules are thus illustrated.

 The magistrate erred, first in accepting the arrangement worked out by the prosecutor, Leader, and Leader's attorney, and secondly in denying Gallaher's motion to strike Leader's direct examination. The error was of constitutional import and was patently prejudicial.

We need not determine here whether Leader, having chosen to testify in part as to Gallaher's guilty participation in the criminal transaction should have been *ordered*, despite his desire "to take the Fifth Amendment," to submit to cross-examination on "connected" or "related" matters bearing upon Gallaher's guilt or innocence. (But see *Brown* v. *United States*, 356 U.S. 148, 155-156 [2 L.Ed.2d 589, 597, 78 S.Ct. 622, 72 A.L.R.2d 818]; *People* v. *Freshour* (1880) 55 Cal. 375, 377; *Zonver* v. *Superior Court* (1969) 270 Cal.App.2d 613, 622, fn. 5 [76 Cal.Rptr. 10].)

It follows that the superior court should have granted Gallaher's Penal Code section 995 motion to set aside the information, as provided by *Jones* v. *Superior Court, supra*, 4 Cal.3d 660, and *Jennings* v. *Superior Court, supra*, 66 Cal.2d 867.

The peremptory writ will issue.

Newsom, J., and Grodin, J., concurred.