Filed 8/30/16  P. v. Sparrow CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>JON CHRISTOPHER SPARROW,<br><br>          Defendant and Appellant. | A145421<br><br>(Sonoma County<br>Super. Ct. No. SCR 605730) |

Defendant Jon Christopher Sparrow[1] repeatedly molested a neighbor child over a period of five years, from the time she was ages 11 through 16.  He contends the trial court erred in refusing to admit the entirety of the videotape of his police interview under Evidence Code section 356 and relied on invalid aggravating factors in sentencing him to the upper term for one of his crimes.  We affirm.

## I.  BACKGROUND

Defendant was charged in an information, filed November 8, 2012, with repeated acts of sexual molestation of a minor under the age of 14 years (Pen. Code, § 288.5, subd. (a)), five counts of oral copulation of a minor (Pen. Code, § 288a, subd. (b)(1)), five counts of sexual penetration of a minor (Pen. Code, § 289, subd. (h)), and a misdemeanor count of annoying or molesting a child (Pen. Code, § 647.6, subd. (a)(1)).  The first 11 counts, which were alleged to have spanned the period from 2005 to 2011,

---

[1] The abstract of judgment lists defendant's first name as "John," but he testified at trial that he spells it as "Jon."

involved a single victim, who will be referred to as Jane Doe 1. The misdemeanor count involved a different girl, Jane Doe 2.

Jane Doe 1 was 20 years old at the time of trial in 2015. When she was eight years old, her family moved into a home located across the street from defendant's home, and the two families eventually became well-acquainted. At some point, Jane Doe 1 began to visit defendant's home on her own, where she would talk with defendant and his wife, swim in their pool, and receive help with her homework, among other activities. When she was older, defendant supplied her and her friends, who would visit his home with her, with marijuana and alcohol.

Over time, Jane Doe 1 developed a "[v]ery close" relationship with defendant and his wife and would visit their home three or four times a week. When she was 11 years old, defendant began molesting her. What began as defendant's administration of shoulder massages was gradually sexualized to include massaging and kissing Jane Doe 1's breasts, body, and vagina. He also directed Jane Doe 1 in masturbating him and used a vibrator to cause her to reach orgasm. These sessions occurred on average once or twice a week throughout the period during which Jane Doe 1 was 11 to 16 years old.

Jane Doe 1 did not tell her friends or family about the molestation until August 1, 2011. That day, she testified, she and Jane Doe 2 ingested hallucinogenic mushrooms with defendant, visited some woods with him, and returned to his home. After a time, Jane Doe 1 went alone to defendant's garage to smoke marijuana. Not long after, through a window, Jane Doe 1 saw Jane Doe 2 approach the garage door, followed closely by defendant. Jane Doe 2 entered the garage alone on the verge of tears, but she did not respond when Jane Doe 1 asked her what happened. Given her history with defendant, Jane Doe 1 suspected abuse, and she later texted Jane Doe 2 to tell her defendant "had been molesting me since I was 11 years old." Jane Doe 2 confirmed that defendant had molested her earlier that day. According to Jane Doe 2's testimony, defendant began to massage her shoulders while she was lying on the couch in his home and then attempted to kiss her. When she got up and walked toward the garage, defendant grabbed her around the waist from behind and, while having an erection,

2

moved his hips against her.  This was the first time he had attempted to molest Jane Doe 2.

Defendant had molested Jane Doe 1 the prior day.  That afternoon, she testified, defendant gave her a back massage while she was lying on his bed.  He then told her to turn over and began massaging and kissing her breasts.  Eventually, he "finger[ed]" her vagina and sucked on it as well.  At that point, he began rubbing his penis against her vagina, which he had never done before.  Jane Doe 1, who was "freaked . . . out" by the latter conduct, jumped from the bed, ran into the bathroom, and wiped off her vagina.  The next day, after Jane Doe 1 reported the molestation, a police technician took tissue samples from Jane Doe 1's neck, breasts, and labia.  Defendant's DNA was identified on Jane Doe 1's breasts, but it was not found on her labia.  The DNA of a second person was also found on Jane Doe 1's neck, but the DNA sample was too small to be analyzed further.

Prior to August 1, the only person Jane Doe 1 had told about defendant's molestation was another adult male neighbor, H.B. Suhrke.  Jane Doe 1 and her family had become close to Suhrke, who took Jane Doe 1 shopping and "bought me whatever I wanted."  Between the time Jane Doe 1 was eight and 14 years old, Suhrke molested her.  In 2010, Jane Doe 1 reported Suhrke's abuse to her mother.  As part of their investigation, the police arranged for Jane Doe 1 to make a pretext call to Suhrke, in an attempt to obtain an acknowledgment of his abuse.  During the call, Suhrke made remarks indicating he was aware that defendant was also molesting Jane Doe 1.  Jane Doe 1 later told defendant about the call to Suhrke.

Testifying on his own behalf, defendant denied the molestation.  Defendant's primary occupation was hair stylist, but he was also a licensed massage therapist.  He acknowledged giving Jane Doe 1 frequent massages, but he said they were always performed within sight of his wife and involved no sexual touching.  Defendant also acknowledged he was aware of Jane Doe 1's claim to have been molested by Suhrke, which he learned from a detective around the time of the pretext call.

3

During cross-examination, the prosecutor made use of the transcript of an interview of defendant by a police detective, which occurred soon after Jane Doe 1 revealed the abuse. After defendant did not mention giving Jane Doe 1 a massage during his testimony about the events on August 1, the prosecutor examined him at length about whether he had given her a standing massage on that day, as he stated in the interview.[2] The prosecutor also questioned him about his failure to tell the detective he had given Jane Doe 1 a full massage on the bed on the prior day, July 31, until after the detective suggested police were in possession of DNA evidence indicating he had touched Jane Doe 1's breasts.

Toward the close of cross-examination, the prosecutor went back to the interview transcript. According to the transcript, the detective told defendant his saliva was found on Jane Doe 1's breasts and vagina.[3] Defendant insisted his saliva was not on Jane Doe 1 and could not have gotten there "on Monday," which was August 1. The prosecutor characterized defendant's response as evasive, pointing out the detective's accusation concerned conduct on July 31, not August 1.

The prosecutor also questioned defendant about his response to accusations of molestation by the detective. Initially, the detective accused defendant of removing Jane Doe 1's shirt and licking and kissing her neck. Defendant responded he did not remove the shirt, without expressly denying oral contact. A short time later in the interview, the detective accused defendant of touching and licking Jane Doe 1's breasts and vagina, telling him, "I have the evidence."[4] Defendant responded, "It shouldn't be there," referring to chemical traces of his saliva on Jane Doe 1's body. The prosecutor

_____

[2] On at least two occasions, the prosecutor also accused defendant of lying when his testimony was not in literal accord with his statements in the interview. The trial court sustained objections to those questions.

[3] This appears to have been a false statement. It is unlikely the DNA test results would have been available at the time of the interview and, in any event, the tests found traces of defendant's DNA only on Jane Doe 1's breasts, not her vaginal area.

[4] In response to a defense objection, the trial court required the prosecutor to read the entire text of the detective's accusation into the record.

4

characterized this response as failing to deny the various acts of which defendant was accused by the detective. Defendant explained he was, in effect, denying the touching by telling the detective his saliva should not have been there. As defendant said, "I couldn't have done it because her clothing was on. So that's a denial right there." When the prosecutor claimed defendant had not actually denied the sexual acts until much later in the interview, defendant responded, ". . . I believe I denied kissing and licking her breasts" much earlier.

Following the cross-examination, defendant moved under Evidence Code section 356 (hereafter section 356) to play for the jury the videotape of the entire police interview. As counsel argued, the prosecutor had asked questions selectively involving events at both the beginning and the end of the interview. Particularly the false DNA accusations, counsel argued, should be viewed by the jury in context of the interaction between the two participants. The prosecutor responded that defense counsel could have used the interview transcript to rehabilitate defendant and could examine the detective, who was the next scheduled witness, about the interview. The court denied the motion, concerned about the use of the victims' actual names during the interview and the two-and-a-half-hour length of the videotape. As the court noted, the entire videotape was cumulative, unduly burdensome, and prejudicial.

Defendant was convicted on all counts. The trial court sentenced him to the upper term of 16 years for violation of Penal Code section 288.5, subdivision (a), repeated acts of sexual molestation of a minor under the age of 14 years. The court noted a single factor in mitigation, defendant's lack of a criminal record, but found this factor was outweighed by aggravating factors. The court cited three in particular. First, the court noted that, as a neighbor, defendant "cultivated" Jane Doe 1 "and brought her into your household, created a situation of trust where none might have existed before, and did it for the purpose of committing these acts of molestation." Second, the court noted defendant's use of illegal drugs to further the molestation. Finally, the court cited defendant's awareness of Suhrke's molestation. As the court explained: "[T]here's not only an indication you were aware of it but that there was some collaboration between

5

you and the prior neighbor, and you took advantage of that.  I'm referring specifically to the statements made by [Suhrke] in the evidence that was presented to the jury, in which he indicated that he knew full well of your molestation, which indicates that you had spoken to him of it and that you had taken advantage of this girl with the prior knowledge and with discussion with the neighbor who committed the prior molestation."  The court imposed an additional three years four months of consecutive sentence, as well as various terms to be served concurrently.

## II.  DISCUSSION

Defendant contends the trial court erred in refusing to permit the jury to view the entire videotape of defendant's police interview and in imposing the upper term on the Penal Code section 288.5 charge.

### A.  *The Videotape*

Section 356 provides:  "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party . . . ."  " 'The purpose of [section 356] is to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed."  (*People v. Vines* (2011) 51 Cal.4th 830, 861.)  The provision "permits introduction only of statements 'on the same subject' or which are necessary for understanding of the statements already introduced."  (*People v. Breaux* (1991) 1 Cal.4th 281, 302.)  "Application of Evidence Code section 356 hinges on the requirement that the two portions of a statement be 'on the same subject.' "  (*Vines*, at p. 861.)  " 'Statements pertaining to other matters may be excluded.' "  (*People v. Chism* (2014) 58 Cal.4th 1266, 1324.)  " 'The rule is not applied mechanically to permit the whole of a transaction to come in without regard to its competency or relevancy. . . .' "  (*People v. Williams* (1975) 13 Cal.3d 559, 565.)

Defendant's argument for admission of the videotape disregards the limitation in section 356 to matters "on the same subject."  As the language of the statute itself makes clear, section 356 does not permit introduction of the entirety of a conversation or statement merely because a portion has been admitted.  In cross-examination, the

6

prosecutor made reference to particular portions of the two-and-a-half-hour interview. Defendant was entitled under section 356 to have those portions presented in full to the jury if necessary to avoid a misimpression of their content. In conformance with this rule, the trial court, in response to appropriate requests by defense counsel, required certain questions by the detective to be read into the record in full during the questioning of defendant.

In moving for admission of the entire videotape, defense counsel did not attempt to demonstrate how any of the particular interactions that were the focus of the prosecutor's questions could have been misunderstood by the jury or how admission of further portions of the interview, let alone the entire tape, could have corrected those alleged misimpressions. Nor did counsel request the admission of additional portions of the interview in order to explain the portions about which defendant was questioned.[5] He simply insisted on admission of the entire videotape. Given counsel's failure to explain how admission of the entire videotape was necessary to correct a misimpression created by the prosecutor's specific cross-examination, the trial court did not abuse its discretion under section 356 in declining to admit it.[6]

At trial, defendant argued that reading from the transcript was not sufficient because it did not convey defendant's demeanor or body language. While this argument might have justified playing for the jury selected, relevant portions of the videotape, it did not justify admitting the entire recording. Because defendant did not offer an edited

_____

[5] When denying admission of the entire videotape, the court referred defense counsel to the transcript, inviting counsel to identify particular portions of the transcript that were necessary to further clarify the portions cited by the prosecutor, but counsel made clear his motion was directed to the entire videotape.

[6] Although the trial court did not cite this specific rationale for denying admission of the videotape, relying instead on Evidence Code section 352, we affirm a trial court's evidentiary ruling "if the ruling was correct on any ground." (*People v. Geier* (2007) 41 Cal.4th 555, 582, overruled on another point as stated in *People v. Houston* (2012) 54 Cal.4th 1186, 1220.) When the trial court was presented with this argument again in connection with defendant's new trial motion, the trial court viewed the tape and denied the motion in part because portions of the videotape were "self-serving and inapplicable," confirming our rationale here.

version of the interview restricted to the interactions that were the subject of cross-examination, instead insisting on admission of the entire videotape, the trial court did not err in denying the motion for use of the videotape.

On appeal, defendant argues the prosecutor used the transcript to call into question his credibility in denying the molestation, and admission of the entire videotape was necessary to demonstrate he was "shocked and surprised by the accusations [the detective] was making, and had made a vehement and forceful denial of those accusations" during the interview. We find no merit in defendant's argument he was entitled to admission of the entire videotape merely because excerpts of the interview had been used to call into question his credibility. As noted, section 356 entitled defendant to admission of portions of the interview "on the same subject"—that is, he was entitled to sufficient excerpts of the interview as necessary to place into proper context the particular interactions used by the prosecutor. The subject of these portions of the interview was defendant's conduct with respect to Jane Doe 1, not the more general issue of his credibility. Nothing in the statute suggests the portions of a conversation or other interaction that are not "on the same subject" are made admissible merely because a discrete portion of the interview is used to attack a testifying defendant's credibility.[7]

Even if the trial court had erred in excluding the entire videotape, we would find that error to be harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) The jury was presented with plausible and consistent testimony by Jane Doe 1 and Jane Doe 2, and physical evidence conclusively identifying defendant as having touched Jane Doe 1's breasts near the time of her examination on August 1, contrary to his denials. Because defendant testified, he had a full opportunity to explain both his conduct at the interview and, more generally, his conduct with respect to Jane Does 1 and 2, and the jury had a

---

[7] Because we find no error in the trial court's decision not to admit the entire videotape under section 356, we need not discuss the court's additional exclusion of the videotape under Evidence Code section 352. We also reject defendant's due process claim based on the same purported error. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 413, fn. 34 ["every state law error does not automatically result in a violation of the federal Constitution"].)

corresponding opportunity to evaluate the credibility of those explanations. Against this wealth of information, any shock and surprise or denials by defendant during the police interview would have added little, beyond consistency with his trial testimony. As the trial court noted in denying defendant's new trial motion based on the failure to admit the videotape, ". . . I saw no difference in the demeanor presented by the defendant at trial in making his denials and with his demeanor on the tape." We conclude there is no reasonable probability that the verdict would have been different if the entire videotape had been played for the jury.

**B.** *The Upper Term*

When making sentencing decisions, trial courts have wide discretion in weighing aggravating and mitigating factors. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.) The trial court may rely on any aggravating or mitigating circumstances reasonably related to its sentencing decision (Cal. Rules of Court, rule 4.420(b)), and a single valid aggravating factor justifies the upper term (*People v. Black* (2007) 41 Cal.4th 799, 815, overruled on another ground in *Cunningham v. California* (2007) 549 U.S. 270.) However, that aggravating factor must be supported by substantial evidence, and it cannot be an element of the crime itself. (*People v. Osband* (1996) 13 Cal.4th 622, 730 (*Osband*).) In the event the trial court is found to have relied on one or more invalid aggravating factors, we reverse for resentencing unless "there is no reasonable probability that a more favorable sentence would have been imposed in the absence of the error." (*Ibid.*)

We agree with defendant that the second and third aggravating factors cited by the trial court were not supported by substantial evidence. The count on which the court imposed sentence was charged under Penal Code section 288.5, involving abuse of a minor under the age of 14. Jane Doe 1 testified that alcohol and marijuana were provided "as [she] got older," and she testified expressly that she did not remember how old she was when defendant first gave her marijuana. Accordingly, there was no evidence to support a finding defendant provided Jane Doe 1 with alcohol or drugs prior to her 14th birthday. Similarly, there was no evidence defendant was aware of Suhrke's abuse of

9

Jane Doe 1 prior to 2010, when she told her mother about it. By that time, Jane Doe 1 was at least 14 years old. Further, there was no evidence the two abusers discussed their abuse of Jane Doe 1, as the trial court believed. The court inferred such discussions from Suhrke's awareness of defendant's abuse, but Jane Doe 1 testified she had told Suhrke about it.

The other aggravating factor cited by the trial court, abuse of a position of trust, was fully supported by the evidence.[8] Defendant was Jane Doe 1's neighbor. At a young age, she became very close to defendant and his wife, and the abuse developed in that context. Contrary to defendant's argument, abuse of trust is not an element of a violation of Penal Code section 288.5, subdivision (a). (*People v. Clark* (1992) 12 Cal.App.4th 663, 666.) As *Clark* held, while the crime of repeated abuse of a child under the age of 14 years must be committed by a person "who either resides in the same home with the minor child or has recurring access to the child" (Pen. Code, § 288.5, subd. (a)), there is no requirement that a position of trust exist between victim and abuser. Because "continuous sexual abuse can be committed by anyone residing in the same home with the children, whether or not they have special status with the victim, such sentencing factor is not an element of the crime." (*Clark*, at p. 666.) This factor was therefore sufficient to support imposition of the upper term.

Because the trial court rested its decision, in part, on aggravating factors that were not supported by substantial evidence, we must consider whether we are required to remand for resentencing. As noted above, an appellate court may affirm the imposition of an upper term based on a single aggravating factor, even when other factors relied upon by the trial court are not sustained, so long as it is reasonably probable that the trial court would not have imposed a lesser sentence in the absence of the erroneous factors. (*Osband*, *supra*, 13 Cal.4th at p. 728; *People v. Cruz* (1995) 38 Cal.App.4th 427, 433.)

---

[8] Defendant's focus on the trial court's statement defendant "imposed himself" on Jane Doe 1's family in explaining this aggravating factor is a red herring. The focus of the court's discussion is clearly defendant's abuse of his position of trust as Jane Doe 1's close friend.

There is a reasonable probability of a more favorable sentence if there is " 'at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result.' " (*People v. Mower* (2002) 28 Cal.4th 457, 484, quoting *People v. Watson, supra,* 46 Cal.2d at p. 837.)

Based on our review of the record, we conclude that there is not such an equal balance of reasonable probabilities here. During sentencing, the court explained "the factors in aggravation far outweigh" the one factor in mitigation. Regarding the three "particularly concern[ing]" aggravating factors, the trial court told defendant that "as a neighbor, you imposed yourself on this family and cultivated Jane Doe 1 to become a victim to sexual molestation and brought her into your household, created a situation of trust where none might have existed before, and did it for the purpose of committing these acts of molestation." These grave breaches of trust by defendant occurred repeatedly when Jane Doe 1 was between 11 and 13 years old. The primary importance of this aggravating factor by the court is reflected both by the court's comments and in the fact that it was mentioned first and foremost in the court's sentencing order.

We conclude the trial court would more likely impose the upper term than a lesser term even in the absence of the two erroneous factors. We therefore affirm the sentence because there is not a reasonable probability that the court would change its sentence upon remand.

Because trial counsel's conduct did not result in any procedural defaults, we need not consider defendant's claims of ineffective assistance.

### III. DISPOSITION

The judgment of the trial court is affirmed.

_____
Margulies, J.

We concur:

_____
Humes, P.J.

_____
Banke, J.