[Crim. No. 12347. Third Dist. Dec. 29, 1983.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT LEE WATSON, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, James T. McNally and Thomas R. Yanger, Deputy Attorneys General, for Plaintiff and Appellant.

Russell J. Swartz, under appointment by the Court of Appeal, and Meek & Swartz for Defendant and Appellant.

**OPINION**

**PUGLIA, P. J.**—In *People* v. *Watson* (1981) 30 Cal.3d 290 [179 Cal.Rptr. 43, 637 P.2d 279], the California Supreme Court held for the first time that second degree murder may be charged when the facts surrounding a vehicular homicide support a finding of implied malice. The court consequently reversed the order of the trial court dismissing the murder counts. This appeal arises out of Watson's subsequent trial for murder.

At trial, a jury found defendant guilty of two counts of second degree murder (Pen. Code, §§ 187, subd. (a); 189; all further statutory references are to sections of the Penal Code unless otherwise indicated) and one count of felony driving while intoxicated resulting in bodily injury to another (former Veh. Code, § 23101, subd. (a); now Veh. Code, § 23153, subd. (a)). In respect to the charged homicides, the information alleged two counts of murder; neither vehicular manslaughter nor any other lesser offense was charged. Defendant moved for a new trial on the ground, among others, that the murder verdicts were contrary to the evidence (§ 1181, subd. 6).[1]

---

[1]Penal Code section 1181 provides in relevant part: "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only: . . . [¶] 6. When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed; . . ."

The trial court denied a new trial but modified the murder verdicts by reducing them to convictions of the lesser included felony of vehicular manslaughter. (§ 192, subd. 3(a).) The court sentenced defendant to the upper term of three years on each count of vehicular manslaughter, the terms to run concurrently. Service of these concurrent sentences was stayed pending completion of a three-year sentence imposed on the violation of former Vehicle Code section 23101, subdivision (a), the stay then to become permanent (§ 654). The People appeal from the order modifying the verdicts (§ 1238, subd. (a)(6)). We shall reverse that order and remand for reconsideration of defendant's motion for new trial.[2]

At around 1 a.m. on January 3, 1979, Penny Maillet and her six-year-old daughter Michelle were killed when the Toyota in which they were traveling collided with a Ford driven by defendant. The relevant events leading up to this tragedy were set in motion by defendant who on the evening of January 2, 1979, visited four bars, drank alcoholic beverages and became quite intoxicated. A bartender at one establishment was so concerned about defendant's ability to drive that he took defendant's car keys away from him and gave them to defendant's companion. Defendant was on the way to a fifth bar when the fatal collision occurred. Police observed defendant at the collision site and noted he "had a strong odor of an alcoholic beverage about him" and "exhibited symptoms of intoxication," including thick, slurred speech and bloodshot eyes. Less than an hour after the incident, his blood-alcohol level was .23 percent.

Moments before the collision, defendant ran a red light at the intersection of Cypress Avenue and Henderson Road. According to witness Ray Tate, defendant was northbound on Henderson, skidded almost to a stop in the middle of the intersection, turned west onto Cypress, and sped away. Tate, who was approaching the intersection westbound on Cypress, had to apply his brakes and come to a full stop in order to avoid a collision. Defendant testified he had not been on Henderson that night but was headed west on Cypress when the light changed to red; he slammed on his brakes and skidded into the middle of the intersection; he saw no other vehicles in the vicinity and proceeded onward.

Approximately four-tenths of a mile west of Henderson defendant reached the intersection of Cypress and Athens, where the fatal collision occurred. Witness Paul Henke, who was driving at about 40 miles per hour westbound on Cypress between Henderson and Athens, testified defendant passed him "at a very rapid rate of speed." The speed limit on Cypress was 35 miles per hour.

---

[2] Defendant cross-appeals from the judgment but our disposition of the People's appeal renders the cross-appeal moot.

An accident reconstruction expert estimated that defendant was traveling between 71 and 76 miles per hour immediately before applying his brakes at the Athens intersection. The expert expressed the opinion that the accident would not have occurred had defendant been traveling at the posted speed limit.

Defendant and witness Henke both testified that at the time defendant entered the intersection at Cypress and Athens, the traffic light was green for traffic westbound on Cypress and red for the victims' Toyota which was entering the intersection on Athens.

Defendant testified that although he had been drinking quite heavily and knew he was exceeding the speed limit, he did not believe he was driving in a such a way as to create a high probability it would result in death.

## I.

A trial court may grant a motion for new trial when a jury verdict is "contrary to . . . evidence." Alternatively "if the *evidence shows* the defendant to be not guilty" of the crime of which he was convicted, "but guilty . . . of a lesser crime included therein, the court may modify the verdict . . . accordingly . . . ." (Italics added; § 1181, subd. 6.) In ruling on defendant's new trial motion, the trial court considered the evidence in the light of matters outside the record, determined the jury's necessary finding of implied malice could not stand and modified the murder verdicts to find defendant guilty of the lesser crimes of vehicular manslaughter. On appeal, the People contend the trial court erred because in exercising its power under section 1181, subdivision 6, the court went beyond what the "evidence show[ed]" and considered "facts" which were not in evidence before the jury.

In determining whether to grant a new trial or modify the verdict under the power conferred by section 1181, subdivision 6, the trial court has broad discretion and is not bound to resolve conflicts in the evidence in favor of the verdict. In the exercise of its supervisory power over the verdict, the court must weigh the probative force of the evidence and satisfy itself there is sufficient credible evidence to sustain the verdict. (*People v. Robarge* (1953) 41 Cal.2d 628, 633 [262 P.2d 14]; *People v. Cartwright* (1979) 98 Cal.App.3d 369, 381 [159 Cal.Rptr. 543].) "This does not mean, however, that the court should disregard the verdict or that it should decide what result it would have reached if the case had been tried without a jury,. . ." (*Robarge*, at p. 633.) The jury is the exclusive finder of fact and the trial court's only duty is to see that this function is intelligently and justly performed. (*Ibid.*) Although the trial court is required independently

to weigh the evidence, its role is distinct from that of the jury as trier of fact in that the trial court exercises a reviewing function. That function is strictly circumscribed by the authority granted by statute. (*People* v. *Serrato* (1973) 9 Cal.3d 753, 760-762 [109 Cal.Rptr. 65, 512 P.2d 289].)

The court placed on the record its reasons for modifying the verdicts, stating that "the finding of implied malice cannot be made because some . . . [evidentiary] matters were not brought to the attention of the jury . . . ." In support of the order the court noted that Henderson Road south of Cypress Avenue had no access for at least a mile, a "fact" not in evidence at trial but one which the court felt "should have been brought to the attention of the jury . . . ." This "fact" led the court to conclude that defendant could not have been northbound on Henderson as Tate had testified. As a consequence, the court "really [had] serious doubts about the accuracy of Mr. Tate's testimony." It will be recalled that Tate testified to a near collision with defendant's vehicle, a fact called into question by defendant's testimony.

Addressing the other evidence bearing on malice, the court indicated that defendant's state of intoxication was insufficient in itself from which to draw an inference of malice. In evaluating the speed factor, the court acknowledged defendant's excessive speed was a contributing cause of the victims' deaths sufficient to establish the element of gross negligence required for felony vehicular manslaughter. The court did not believe, however, that the evidence of excessive speed warranted an inference of malice, that is, that it demonstrated on defendant's part the subjective awareness of the high degree of risk to human life accompanied by the type of wanton conduct from which malice may be implied. (See *People* v. *Watson, supra,* 30 Cal.3d at pp. 296, 300-301.)

In reaching the latter conclusion, the court again drew upon matters not in evidence before the jury. Noting that Cypress was a thoroughfare similar to a freeway and that cars routinely traveled it during peak traffic periods at the speed of 50 miles per hour, the court believed the jury may have been misled about the significance of evidence the posted speed limit was 35 miles per hour. The court expressed the view "that evidence should have been admitted to the jury to determine what is a safe speed and what is the amount that the defendant exceeded that safe speed." In the absence of such evidence the court was concerned the jury did not realize that a safe speed at 1 a.m. might be in excess of the posted limit. In the view of the court "a safe speed could be as high as fifty miles per hour."

 Defendant maintains that the trial court acted properly in taking judicial notice of such commonly known facts as the limited access to Hen-

derson Road and the traffic conditions on Cypress Avenue. (See *Varcoe* v. *Lee* (1919) 180 Cal. 338, 343-347 [181 P. 223]; *Hom* v. *Clark* (1963) 221 Cal.App.2d 622, 637-638 [35 Cal.Rptr. 11]; *People* v. *Harris* (1956) 146 Cal.App.2d 142, 146 [304 P.2d 178]; see also Evid. Code, § 452.) However, the issue here is not whether these matters generally are proper subjects of judicial notice but whether a trial court, in ruling on a motion for new trial, can *"give effect to a matter capable of being judicially noticed— i.e., assumed without evidence—but not referred to in the record, . . ."* (Italics in original; fn. omitted; see 9 Wigmore, Evidence (Chadbourn rev. ed. 1981) § 2566, pp. 711-712;) The answer appears plainly on the face of section 1181, subdivision 6, which is the exclusive source of authority by which the trial court is empowered to act in these circumstances (*People* v. *Serrato, supra,* 9 Cal.3d at p. 760.)

Section 1181, subdivision 6, confers on the trial court a "reviewing function" the exercise of which "must necessarily be limited to those [consequences] contemplated by statute." (*Id.,* at p. 761.) The statute clearly contemplates review will be confined to what the "evidence shows" (§ 1181, subd. 6). This principle is illustrated by *People* v. *Lines* (1975) 13 Cal.3d 500 [119 Cal.Rptr. 225, 531 P.2d 793]. Even though evidence of diminished capacity had been introduced in the sanity phase of a trial, the absence of any such evidence in the guilt phase precluded its consideration by the trial court in ruling on defendant's motion to reduce the verdict from murder to manslaughter. (*Id.,* at pp. 506-507; see also *People* v. *Anderson* (1975) 15 Cal.3d 806, 809 [126 Cal.Rptr. 235, 543 P.2d 603].)

██ Although the trial court's scope of review in ruling on a motion for new trial is broader than that granted an appellate court under section 1181, subdivision 6 (*Serrato, supra,* 9 Cal.3d at p. 761), the trial court does not supplant the jury as exclusive finder of fact, but in the exercise of its supervisory capacity insures only that the jury's function has been performed justly and intelligently (*Robarge, supra,* 41 Cal.2d at p. 633). ██ Here the court exceeded the bounds of its supervisory capacity over the jury's function and transcended the limits of the power of review conferred by section 1181, subdivision 6, by reweighing the evidence in the light of judicially noticed facts which were not before the jury.

The noticed facts were not insignificant. The only real controversy at trial concerned the existence or not of malice. The testimony of the witness Tate, if believed, raises a strong inference of malice. Tate testified defendant's vehicle ran a red light moments before the fatal accident, causing a near collision with his automobile. From that testimony of a near collision the factfinder could infer that defendant was indeed aware that the reckless operation of his vehicle posed a high degree of risk to human life yet wan-

tonly persisted in this conduct in conscious disregard of the danger. Based solely on facts not before the jury, the trial court expressed "serious doubts about the accuracy of Mr. Tate's testimony." The excessive speed at which defendant was traveling before the accident was also evidence of malice. Yet the trial court mitigated the probative force of this evidence by injecting into its review a "safe speed" standard that was not in evidence before the jury. Having accepted these matters as true without formal proof or opportunity for the People of refutation or rebuttal, the trial court found unsupportable the finding of malice necessary to the murder convictions.

The trial court's departure from the statutory standard of review requires *that we reverse the order of modification and direct the trial court to reconsider defendant's new trial motion without regard to matters not in evidence before the jury.*

## II.

■ For guidance of the trial court on remand, we point out that the murder verdicts are legally infirm regardless of whether they are supported by credible evidence. Given the finding of the trial court that credible evidence supported verdicts of vehicular manslaughter, it follows the jury should have been instructed on the lesser offense if, as we shall conclude, it is necessarily included within murder. (See *People* v. *Wickersham* (1982) 32 Cal.3d 307, 324, 325 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715-716, 720, 721 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) Thus the failure, *sua sponte,* to instruct thereon was error in itself requiring a new trial (§ 1181, subd. 5).[3]

■ Considered superficially, vehicular manslaughter does not readily appear to be necessarily included within murder. A crime is necessarily included in a greater offense if the statutory definition of the greater offense includes all the elements of the lesser so that the greater offense may not be accomplished without necessarily committing the lesser. (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 98 [192 Cal.Rptr. 748, 665 P.2d 520]; *People* v. *Lohbauer* (1981) 29 Cal.3d 364, 368-372 [173 Cal.Rptr. 453, 627 P.2d 183].) As defined by section 192, subdivision 3, vehicular manslaughter is an unlawful killing without malice perpetrated with gross negligence by means of a vehicle. Since murder, which is the unlawful killing of a human being with malice aforethought (§ 187, subd. (a)), can be committed without

---

[3]In considering the motion for new trial, the trial court suggested that legal error had been committed by its failure to instruct *sua sponte* on vehicular manslaughter.

the instrumentality of a vehicle, it could be argued that vehicular manslaughter is not necessarily included within murder.[4]

It is firmly established, however, that "manslaughter" is necessarily included in murder. (*The People* v. *Gilmore* (1854) 4 Cal. 376, 380; *People* v. *McFarlane* (1903) 138 Cal. 481, 484 [71 P. 568]; *People* v. *Carmen* (1951) 36 Cal.2d 768, 773-774 [228 P.2d 281].) As the Supreme Court stated in *Gilmore*: "An indictment, by operation of law for murder, is also an indictment for manslaughter, and every less offense that may be included under the charge of murder, just as much as though it were charged in distinct and separate counts." (P. 380.) In other words, a charge of murder includes a "charge of the lesser grade of homicide,—manslaughter." (*People* v. *Smith* (1901) 134 Cal. 453, 454-455 [66 P. 669]; see also *Carmen, supra,* 36 Cal.2d at p. 774, quoting *Stevenson* v. *United States* (1896) 162 U.S. 313, 314-315 [40 L.Ed. 980, 981, 16 S.Ct. 839].)

Furthermore, from the authorities, it is clear that both "voluntary" and "involuntary" manslaughter as defined in subdivisions 1 and 2 of section 192 are necessarily included in murder. (*Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 517 [183 Cal.Rptr. 647, 646, P. 2d 809]; *In re McCartney* (1966) 64 Cal.2d 830, 831 [51 Cal.Rptr. 894, 415 P.2d 782]; *People* v. *McManis* (1972) 26 Cal.App.3d 608, 614 [102 Cal.Rptr. 889].) Nonetheless, although murder can be committed using a vehicle as the instrument (see, e.g., *People* v. *Watson, supra,* 30 Cal.3d 290), the definition of involuntary manslaughter in subdivision 2 of section 192 specifically *excludes* homicides committed by means of a vehicle. Similarly, although murder can be committed without also committing either a "misdemeanor inherently dangerous to human life" or an "act ordinarily lawful which involves a high risk of death or great bodily harm" (see *People* v. *Williams* (1975) 13 Cal.3d 559, 562 [119 Cal.Rptr. 210, 531 P.2d 778]), involuntary manslaughter as defined in subdivision 2 of section 192 occurs "in the commission of an unlawful act, not amounting to felony" or "in the commission of a lawful act which might produce death, . . ." Given that involuntary manslaughter is necessarily included in murder, the requirements set forth in subdivision 2 of section 192 perforce cannot be elements of involuntary manslaughter for purposes of included offenses.

Against the background of firmly established decisional law, logic dictates that for purposes of necessarily included offense analysis, man-

---

[4]A lesser crime is also necessarily included where the language of the accusatory pleading encompasses all the elements of the lesser offense. (*People* v. *Marshall* (1957) 48 Cal.2d 394, 405 [309 P.2d 456]; *People* v. *Lohbauer, supra,* 29 Cal.3d at pp. 368-369.) Here, the information charges murder in the language of the statute (Pen. Code, § 187, subd. (a)). Use of a vehicle is not alleged.

slaughter be regarded as a single offense with the separate subdivisions under section 192 merely defining the different circumstances under which an unlawful killing constitutes manslaughter, but not stating additional elements of the crime. For purposes of necessarily included offense analysis, the elements of manslaughter as expressed in section 192 are the unlawful killing of a human being without malice.[5] Vehicular manslaughter is such a killing. (See *People* v. *Watson, supra,* at p. 298.)

In *People* v. *Collins* (1960) 54 Cal.2d 57 [4 Cal.Rptr. 158, 351 P.2d 326], the Supreme Court adopted a similar approach in rationalizing the different subdivisions of section 261 then in effect, concluding they did "not state different offenses but merely define[d] the different circumstances under which an act of intercourse constitutes the crime of rape." (At p. 59.) *Collins* held a defendant who was charged only with forcible rape as then defined in subdivision 3 of section 261 could be convicted of statutory rape as then defined in subdivision 1 of section 261, if he was not misled to his prejudice in preparing a defense as to the scope of his potential criminal liability. (*Id.,* at pp. 59-60.)

*People* v. *Lohbauer, supra,* 29 Cal.3d 364, represents the most recent clarification of the tests for necessarily included offenses. Noting that *Collins* stood only for the proposition that rape was but one crime, *Lohbauer* dispelled the misapprehension that *Collins* had somehow created a new variety of necessarily included offense where the elements of the lesser offense are incongruent with the offense charged but the defendant was not "misled to his prejudice and thereby prevented from preparing an effective defense." (At pp. 369-372; see also *People* v. *Escarcega* (1974) 43 Cal.App.3d 391, 396-397, fn. 1 [117 Cal.Rptr. 595].)

---

[5]Section 192 provides in full: "Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds:

"1. Voluntary—upon a sudden quarrel or heat of passion.

"2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle.

"3. In the driving of a vehicle—

"(a) In the commission of an unlawful act, not amounting to a felony, with gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.

"(b) In the commission of an unlawful act, not amounting to felony, without gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence.

"This section shall not be construed as making any homicide in the driving of a vehicle punishable which is not a proximate result of the commission of an unlawful act, not amounting to felony, or of the commission of a lawful act which might produce death, in an unlawful manner."

*Lohbauer* restricts necessarily included offenses to two categories tested respectively by the statutory elements of the greater and lesser crimes and the specific charging allegations of the particular accusatory pleading. (*Supra,* 29 Cal.3d at pp. 368-369.) Each of the two recognized tests for determining necessarily included offenses meets the demands of due process in that the defendant is adequately apprised of the full range of his potential criminal liability. (*Id.,* at p. 370.) This due process imperative is satisfied where the elements of manslaughter as necessarily included in murder consist of an unlawful killing without malice, and the three subdivisions of section 192 simply define the different circumstances under which manslaughter may be committed. Trial courts routinely distinguish on the basis of the evidence presented whether in a murder prosecution a particular type of manslaughter instruction is justified or required (*People* v. *Wickersham, supra,* 32 Cal.3d at pp. 325-326). This flexibility in murder cases would be unduly circumscribed were the various subdivisions of section 192 deemed to state additional elements of the particular type of manslaughter therein described.

We conclude that the three subdivisions of section 192 each define a species of the single crime of manslaughter and that manslaughter—the unlawful killing of a human being without malice—is an offense necessarily included within murder. Where, as here, the evidence so warrants, the court must instruct on that theory of the case even without request. Because of the failure so to instruct, the murder verdicts cannot stand.

As the murder verdicts are infected by error of law, the trial court's options on remand are limited to (1) modifying the verdicts of murder to vehicular manslaughter if the evidence shows defendant to be not guilty of murder but guilty of manslaughter or, if such modification is not warranted by a review of the evidence in conformity with section 1181, subdivision 6, (2) granting a new trial.

The order modifying the murder verdicts is reversed with instructions for the trial court to reconsider and rule on defendant's new trial motion according to the views expressed in this opinion. (See *People* v. *Robarge, supra,* at p. 635.)

Sparks, J., and Dawson, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.