[No. A098565. First Dist., Div. Two. May 11, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT WILLIAM MOREDA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III A and III B.

508

COUNSEL

James Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Ross C. Moody and Gregg E. Zywicke, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HAERLE, J.—

## I. INTRODUCTION

Robert Moreda (Moreda) was convicted by a jury of attempted premeditated and deliberate murder (Pen. Code, §§ 664 and 187, subd. (a)),[1] and assault with a deadly weapon (§ 245, subd. (a)). The jury also found true enhancement allegations that one or both offenses involved firearm use (§ 12022.5, subd. (a)(1)), domestic violence resulting in great bodily injury (§ 12022.7, subd. (d)), and discharge of a firearm (§ 12022.53, subd. (d)). Moreda was sentenced to an indeterminate term of life in prison with the possibility of parole and a consecutive determinate term of 25 years to life.

Moreda contends the judgment must be reversed for three independent reasons: (1) the trial court refused to suppress evidence recovered during a protective sweep of Moreda's apartment; (2) evidence relating to Moreda's experience as a hunter was irrelevant and prejudicial; (3) the judge who ruled on Moreda's motion for a new trial was not the same judge who presided over the jury trial. We affirm.

## II. STATEMENT OF FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. DISCUSSION

A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[1] Unless otherwise indicated all statutory references are to the Penal Code.
*See footnote, *ante*, page 507.

## C. The New Trial Motion

Moreda contends the judgment must be reversed because he was denied his statutory and constitutional right to a "meaningful consideration" of the claim in his new trial motion that the findings and verdicts of the jury were contrary to the evidence.

### 1. Background

The jury returned its verdicts on April 25, 2000. On July 28, Moreda filed a proper motion for new trial. Moreda raised a variety of issues but did not argue that the verdicts were against the weight of the evidence. On July 31, 2000, the trial court granted Moreda's motion for substitute counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]. Almost a year later, on July 27, 2001, Moreda's new counsel filed a motion for new trial on the following grounds: (1) admission of prejudicial prior hunting activity evidence; (2) denial of the right to be mentally as well as physically present at trial; (3) ineffective assistance of counsel; and (4) the verdicts were contrary to the law and evidence.

On August 31, 2001, Moreda filed a motion to disqualify the trial judge, the Honorable Barbara Mallach. Defense counsel contended that Judge Mallach was biased against him because she disapproved of the methods he used to investigate the defense claim that Moreda was denied the right to be mentally present at trial which included, among other things, interviewing court staff. On October 31, 2001, the motion to disqualify Judge Mallach was granted after she declined to testify at a hearing on the matter. On December 13, 2001, the case was assigned to the Honorable Carl Holm.

On January 28, 2002, Moreda filed a supplemental brief in which he argued that he was "denied his right to a judicial reweighing of the evidence pursuant to the '13th juror' function of Penal Code section 1181 (6) [and] (7)[4] by the disqualification of the judge who presided at his trial and [he was] therefore entitled to a new trial." Moreda's position was that Judge Holm could not rule on the merits of his claim that the verdicts were not supported by the evidence. Moreda argued that, since Judge Holm was not present during trial, he was unable to appropriately exercise his power and duty to consider the sufficiency of the evidence, to weigh conflicts and inconsistencies and to evaluate the credibility of witnesses.

---

[4] Section 1181 sets forth the grounds pursuant to which the court may grant a new trial. Paragraphs 6 and 7 of section 1181 both authorize the court to grant a new trial when "the verdict or finding is contrary to law or evidence." In addition, these provisions authorize the court to modify the verdict in specified ways to comport with the evidence as an alternative to granting a new trial.

On March 14, 2002, the trial court ruled that Moreda was not entitled to a new trial on the ground that the judge who presided at trial was unavailable to rule on his new trial motion. Subsequently, the court rejected the other grounds for seeking a new trial, including the claim that the verdicts were not supported by the evidence, and therefore denied Moreda's motion.

### 2. Analysis

Moreda argues that the denial of his motion for a new trial constituted a violation of due process. Moreda's theory is that section 1181 confers upon the criminal defendant a procedural liberty interest in having the trial judge who presided at trial determine whether the verdict was against the weight of the evidence and due process precludes the state from arbitrarily depriving Moreda of this right.

#### a. Due process

Moreda rests his due process argument on *Hicks v. Oklahoma* (1980) 447 U.S. 343 [65 L.Ed.2d 175, 100 S.Ct. 2227] (*Hicks*). In that case, an Oklahoma state court jury found the defendant guilty of unlawfully distributing heroin and imposed a mandatory 40-year prison term pursuant to an habitual offender statute then in effect in Oklahoma. (*Id.* at pp. 344–345.) The defendant appealed after the habitual offender statute was declared unconstitutional in a different case. The criminal appeals court affirmed the conviction and sentence notwithstanding the fact that the sentencing statute had been found invalid "reasoning that the petitioner was not prejudiced by the impact of the invalid statute, since his sentence was within the range of punishment that could have been imposed in any event." (*Id.* at p. 345.)

The *Hicks* court vacated the judgment and remanded the case to the Oklahoma court. (*Hicks, supra*, 447 U.S. at p. 347.) It first rejected the state court's factual conclusion that the defendant had not been prejudiced by the application of the invalid statute. Pursuant to applicable provisions of the Oklahoma statute, the defendant was "entitled to have his punishment fixed by the jury" and, if the jury had been properly instructed, it could have imposed "any sentence of 'not less than ten . . . years.' " (*Id.* at pp. 345–346, citing Okla. Stats. 1971, tit. 22, § 926, and quoting Okla. Stats. 1971, tit. 21, § 51(A)(1).) Since there was a "substantial" possibility the jury would have returned a sentence of less than 40 years, the court erred by concluding the defendant was not prejudiced. (*Hicks,* at p. 346.)

The *Hicks* court also rejected the contention that only state procedural rights were implicated by the improper application of the invalid sentencing statute to the defendant. (*Hicks, supra*, 447 U.S. at p. 346.) The court

reasoned that where "a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, [citation], and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State. [Citations.]" (*Ibid.*) The court found that the denial of the defendant's state law right to a jury sentence "simply on the frail conjecture that a jury *might* have imposed a sentence equally as harsh as that mandated by the invalid habitual offender provision" was "an arbitrary disregard of the petitioner's right to liberty" and a "denial of due process of law." (*Ibid.*)

Moreda contends that *Hicks* supports his claim that "it was a denial of due process to allow another judge to rule on the aspect of the new trial motion based on section 1181, paragraphs 6 and 7." Since *Hicks* holds that the arbitrary deprivation of a state-conferred liberty interest violates federal constitutional due process, Moreda must show that he has a right under California law to have the judge who presided at trial hear his new trial motion. Moreda cannot make this showing.

### b. Section 1181

Moreda contends that section 1181, paragraphs 6 and 7, confer on criminal defendants a liberty interest in having the judge who presided at trial determine whether the verdict is contrary to the evidence.

Section 1181, paragraphs 6 and 7, give the criminal defendant the right to move for a new trial on the ground that the "verdict or finding is contrary to law or evidence . . . ." However, section 1181 does not contain any language requiring or even suggesting that the motion must be decided by the judge who presided at trial. Thus, in contrast to the *Hicks* defendant, Moreda has no express statutory basis for claiming a constitutionally protected liberty interest in this case. Nevertheless, Moreda maintains his right to have the judge who presided at trial resolve his new trial motion is established by case law construing section 1181.

According to Moreda, case law establishes that "a criminal defendant is essentially entitled to two decisions on the weight of the evidence, one by the jury and one by the trial judge." Moreda urges that the trial court, in contrast to an appellate court, has the obligation to independently weigh the evidence and to determine whether there is sufficient credible evidence to support the jury's verdict. (See *People v. Robarge* (1953) 41 Cal.2d 628, 633–634 [262

P.2d 14]; *People v. Serrato* (1973) 9 Cal.3d 753, 761 [109 Cal.Rptr. 65, 512 P.2d 289] disapproved on other grounds in *People v. Fosselman* (1983) 33 Cal.3d 572, 583 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People v. Redmond* (1969) 71 Cal.2d 745, 759–760 [79 Cal.Rptr. 529, 457 P.2d 321].) Moreda maintains that only the trial judge who presides at trial and sees the witnesses and hears their testimony can competently discharge the obligation to independently weigh the evidence and determine whether there is sufficient credible evidence to support the verdict.

Moreda misperceives the trial court's role when reviewing the sufficiency of the evidence pursuant to a new trial motion. "It has been stated that a defendant is entitled to two decisions on the evidence, one by the jury and the other by the court on motion for a new trial. [Citations.] This does not mean, however, that the court should disregard the verdict or that it should decide what result it would have reached if the case had been tried without a jury, but instead that it should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict. [Citations.]" (*People v. Robarge, supra*, 41 Cal.2d at p. 633.)

■ The second decision on the evidence to which the defendant is entitled pursuant to section 1181 is fundamentally different from the jury's decision. The trial court "exercises a supervisory power over the verdict," (*People v. Robarge, supra*, 41 Cal.2d at p. 633; *People v. Taylor* (1993) 19 Cal.App.4th 836, 843, 853 [23 Cal.Rptr.2d 846]; *People v. Watson* (1983) 150 Cal.App.3d 313, 317 [198 Cal.Rptr. 26], disapproved on other grounds in *People v. Sanchez* (2001) 24 Cal.4th 983, 991 [103 Cal.Rptr.2d 698, 16 P.3d 118]), it is guided by "a presumption in favor of the correctness of the verdict and proceedings supporting it," (*People v. Davis* (1995) 10 Cal.4th 463, 524 [41 Cal.Rptr.2d 826, 896 P.2d 119]), and its reviewing function is "strictly circumscribed by the authority granted by statute." (*People v. Watson, supra*, 150 Cal.App.3d at p. 318.) That statute, section 1181, "clearly contemplates review will be confined to what the 'evidence shows' (§ 1181, para. 6)." (*People v. Watson, supra*, 150 Cal.App.3d at p. 319.) Thus, although the trial court has broad discretion in this area, that discretion is abused when the court exceeds the bounds of its supervisory capacity over the jury's function by, for example, considering facts or evidence outside the record. (*Ibid.*)

■ Certainly, a judge's first-hand observations of the demeanor of a witness could be useful when ruling on a motion for new trial. However, since the court functions in a supervisory capacity and its review must be limited to what the evidence shows, we believe that, at least in most cases, a court can effectively rule on a motion for new trial by reviewing the transcripts of the proceedings and thereby determining whether the jury's

verdict, and the weight of evidence and credibility determinations upon which that verdict rests, are supported by the evidence. Thus, we disagree that section 1181 implicitly confers on criminal defendants the right to demand or expect that the judge who presided at trial also rule on his or her post-trial challenge to the sufficiency of the evidence.

### 3. Section 1053

As discussed above, the *Hicks* defendant was denied a procedural right that was expressly conferred by a state statute. (*Hicks, supra,* 447 U.S. at pp. 345–346.) Indeed, in that case, "[t]he State concede[d] that the petitioner had a statutory right to have a jury fix his punishment in the first instance . . . ." (*Id.* at p. 347.) Here, by contrast, California statutory law is inconsistent with Moreda's claimed right.

Section 1053 states: "If after the commencement of the trial of a criminal action or proceeding in any court the judge or justice presiding at the trial shall die, become ill, or for any other reason be unable to proceed with the trial, any other judge or justice of the court in which the trial is proceeding may proceed with and finish the trial . . . . The judge or justice authorized by this section to proceed with and complete the trial shall have the same power, authority, and jurisdiction as if the trial had been commenced before that judge or justice."

Rather than address the express language of section 1053, Moreda takes the position that this provision must be construed so as not to conflict with the constitutionally protected liberty interest conferred on the criminal defendant by section 1181. As we have already explained, section 1181 does not confer on the criminal defendant the right to have a new trial motion decided by the judge who presided at trial. A judge who did not preside at trial can perform its supervisory function under section 1181 by independently reviewing the trial record in order to determine whether the evidence supports the verdict. Thus we reject Moreda's invitation to ignore the express language of section 1053.

■ Case law construing section 1053 further undermines Moreda's position. It establishes that the substitution of a judge during a criminal trial does not require the consent of the defendant and does not violate the defendant's due process rights. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1211–1212 [275 Cal.Rptr. 729, 800 P.2d 1159].) There is also authority that section 1053 authorizes a judge who did not preside at trial to rule upon posttrial motions including a motion for new trial. (*People v. Holzer* (1972) 25 Cal.App.3d 456 [102 Cal.Rptr. 11], disapproved on other grounds in *People v. Palmer* (2001) 24 Cal.4th 856, 867 [103 Cal.Rptr.2d 13, 15 P.3d 234], *People v. Burgener*

(1990) 223 Cal.App.3d 427, 436 [272 Cal.Rptr. 830]; see also *People v. Clifton* (1969) 270 Cal.App.2d 860, 862 [76 Cal.Rptr. 193].) In fact, in *People v. Holzer*, the court rejected essentially the same argument Moreda makes here. (*People v. Holzer, supra,* 25 Cal.App.3d at p. 464.) In that case, the judge who presided at trial died before ruling on the defendant's motion for new trial. On appeal, the *Holzer* defendant argued that "[s]ince the judge who ruled on defendant's [new trial] motion was not in a position to consider the demeanor of witnesses, defendant was in effect denied his right to have the evidence reweighed" under section 1181, paragraph 6. (*People v. Holzer, supra,* 25 Cal.App.3d at p. 464.) The *Holzer* court disagreed, finding that the defendant had the benefit of a full jury trial, that he had not advanced any reason why the verdict was contrary to the law or evidence and that, in any event, "there is no error in having another judge hear and rule on the motion for a new trial when the trial judge dies before the motion can be heard." (*Ibid.*)

Moreda contends that cases construing section 1053 are distinguishable. In contrast to published decisions authorizing a different judge to rule on a new trial motion, in this case Moreda's new trial motion squarely raised credibility and weight of the evidence issues. We acknowledge this distinction. Moreda did expressly argue in the court below that the verdict was against the weight of the evidence and that the jury misjudged his credibility regarding the issue of intent. However, we reject Moreda's assumption that this distinction is outcome-determinative.

■ We simply do not accept Moreda's premise that personally observing the demeanor of a witness while on the stand at trial is an essential component of the trial court's review function under section 1181. A credibility dispute or conflict in the evidence significant enough to effect the outcome of a trial would have to be manifest in the record of the trial proceedings. In other words, a judge does not have to have been present at trial in order to determine whether the jury resolved a material credibility dispute or weighed conflicting material evidence. By reviewing a transcript of the proceedings, the judge can reconsider the jury's resolution of such matters; he or she can make credibility determinations and weigh the evidence and then determine whether the evidence supports the verdict.

Moreda's contrary position is based on the unlikely proposition that a judge's percipient observation of the demeanor of a witness would, *by itself*, support a decision to grant a new trial. Frankly, we cannot conceive of such a case particularly since the trial court must be able to articulate *facts* to support its determination that a verdict is not supported by credible evidence. (*Cf. People v. Taylor, supra,* 19 Cal.App.4th at pp. 847–848.) If, however, the trial record presents an evidentiary conflict which so troubles a trial judge that his or her failure to personally observe a witness precludes him or her

from finding that a verdict is supported by the evidence, it seems to us that the judge could properly grant the defendant a new trial. In this regard, we note that the present case clearly did not pose such a problem for the trial court.

Though not directly on point, our Supreme Court's resolution of an analogous issue reinforces our conclusion in this case. (See *People v. Espinoza* (1992) 3 Cal.4th 806 [12 Cal.Rptr.2d 682, 838 P.2d 204] (*Espinoza*).) *Espinoza* was a murder case in which the court affirmed a death judgment. The court held, among other things, that the defendant's rights were not violated by the fact that a motion to modify the death verdict was adjudicated by a judge who did not hear the entire guilt phase trial. (*Id.* at pp. 828–831.) The judge who presided when the guilt phase commenced became too ill to continue and a different judge was appointed pursuant to section 1053. The defendant objected to the midtrial substitution on several grounds including that the second judge could not properly rule on the motion to modify the jury's death verdict. (*Espinoza,* at p. 829.) The defendant expressly argued that, because the second judge did not personally hear the testimony of a crucial material witness, he could not possibly evaluate the witness's credibility and thus "could not fully exercise his independent judgment of the evidence" for purposes of ruling on the motion. (*Ibid.*) The *Espinoza* court disagreed. It acknowledged that, when ruling on a motion to modify a death judgment, the trial court conducts an independent review of the evidence; the judge must " 'assess the credibility of the witnesses, determine the probative force of the testimony, and weigh the evidence.' " Notwithstanding this procedure, the *Espinoza* court rejected the defendant's contention that "the requisite assessment can be made only by a judge who has personally heard the testimony presented at the guilt phase of the trial." (*Id.* at p. 830.) The *Espinoza* court reasoned that the trial court was not to make an "independent and de novo penalty determination." Rather, the trial court was required to make an independent judgment as to whether the weight of the evidence supports the jury verdict. The court rejected the contention that the second judge could not fully exercise that independent judgment by reviewing the transcripts of the trial proceedings that took place before his substitution. (*Ibid.*)

 The postverdict review conducted by the trial court in *Espinoza* is comparable to the review that a trial court performs when ruling on a motion for new trial challenging the sufficiency of the evidence. In both contexts, the court undertakes an independent analysis, weighs the evidence, and makes credibility determinations, but does not substitute its own judgment for that of the jury. Thus, the Supreme Court's holding in *Espinoza* applies in this context. It confirms our conclusion that a judge who did not personally hear testimony at trial may nevertheless make an adequate independent

assessment of the evidence in the record in order to determine whether the weight of the evidence supports the jury's verdict.

Moreda's final contention is that a "better-reasoned approach" to the issue he raises is "demonstrated by a set of cases from Florida." This contention is irrelevant since the very premise of Moreda's claim is that he has been deprived of a right conferred by California law. However, regarding the law in other jurisdictions, a recent publication noted that "[i]t has been held by the decided majority of the cases passing on the question that a judge who is substituted in the place of the presiding judge after the verdict of the jury has been returned may hear and determine a motion for new a trial or in arrest of judgment . . . ." (Annot., Substitution of Judge in State Criminal Trial (1997) 45 A.L.R.5th 591, 612.)

In summary, we reject Moreda's argument that he was entitled to a new trial solely because the judge who ruled on his motion for new trial did not preside at the trial. Moreda did not have a right to demand or expect that the same judge who presided at trial would rule on his new trial motion. Furthermore, the fact that Judge Holm did not preside at trial did not preclude him from competently performing his supervisory function under section 1181, paragraphs 6 and 7, to review the evidence and determine whether it supported the verdicts. Finally, since Moreda did not have a state conferred right to obtain a ruling on the section 1181, paragraphs 6 and 7, motion from the judge who presided at trial, the resolution of that motion by Judge Holm did not violate Moreda's due process rights.

## IV. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Lambden, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 18, 2004. Chin, J., did not participate therein.