Filed 8/17/15  P. v .Molina CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERIK O. MOLINA,<br><br>    Defendant and Appellant. | B253056<br><br>(Los Angeles County<br>Super. Ct. No. BA369149) |

APPEAL from judgment of the Superior Court of Los Angeles County, Robert J. Perry, Judge.  Affirmed.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Zee Rodriguez and Esther P.Kim, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Erik O. Molina appeals from a judgment entered after a jury convicted him on one count of second degree murder (Pen. Code, § 187)[1] and one count of voluntary manslaughter (§ 192, subd. (a).) The jury found true the allegation that appellant personally and intentionally discharged a firearm which proximately caused great bodily injury and death. (§ 12022.53, subds. (b)-(d).)

In this appeal, appellant contends the trial court erred in failing to instruct the jury sua sponte as to gross vehicular manslaughter and misdemeanor vehicular manslaughter as lesser included offenses to murder. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

In March 2010, appellant, a member of the Mid City Stoners gang, was staying with his then-girlfriend, Brenda Varela. Varela lived in 18th Street gang territory with her children and grandchildren. The 18th Street gang was a rival of the Mid City Stoners gang. Ryan O'Connell, a family friend and a member of the 18th Street gang, also visited the home frequently. On March 13, 2010, appellant got into an argument with O'Connell. O'Connell made a gesture with his hand, indicating that appellant "talk[s] too much." Appellant reached into his pocket, pulled out a gun, and shot O'Connell in the head. Appellant fled through the front gate.

Appellant called Angel Taylor, another girlfriend of appellant. Taylor was in a car with Jesus Espinosa, appellant's friend and fellow Mid City Stoners gang member. Taylor and Espinosa picked up appellant; he told them that he had just shot someone and that he needed to pick up the gun he had used. After appellant retrieved the gun, Taylor drove him to a hotel.

On March 23, 2010, appellant borrowed Taylor's Ford Explorer SUV and was driving with Espinosa. The two men went to a tax business run by Rocky Lopez, a member of the Harpys gang. Several men were present outside of the business. Espinosa was armed with a gun; appellant was not. Appellant stayed outside while Espinosa entered the building. Once inside, Espinosa had a disagreement with Lopez, who told

---

[1]    Subsequent statutory references are to the Penal Code.

2

Espinosa to leave or go outside so they could fight. Espinosa went outside, took off his shirt, and handed appellant his gun. Lopez then told Blacky, another Harpys gang member, to "go get the straps." Espinosa understood the term "straps" to mean guns. Blacky ran into the building and Espinosa asked appellant for the gun and told him to get the car.

Appellant entered the car and quickly backed out of the driveway. The men standing outside of the building were throwing bottles, milk crates, and chairs at the car. When one of the men tried to close the gate, which could have prevented the truck from leaving, Espinosa pulled out his gun and started shooting. While the SUV was backing out, Lopez held onto the SUV and yelled for the Harpys gang members to attack. The SUV struck Ulices, Rocky Lopez's son. The SUV also reversed over Lopez, dragged him into the street, and "went over him" once more before driving away.

Appellant was charged with three counts: (1) murder as to Ryan O'Connell, (2) murder as to Rocky Lopez, and (3) attempted murder as to Ulices Lopez.[2] As to count 1, it was alleged that appellant personally and intentionally discharged a firearm which proximately caused great bodily injury and death. (§ 12022.53, subds. (b)-(d).) As to counts 2 and 3, it was alleged that a principal personally and intentionally discharged a firearm which proximately caused great bodily injury and death (§ 12022.53, subds. (b)-(e)(1)) and that the offenses were committed for the benefit of a criminal street gang. (§ 186.22, subd.(b)(1)(C).) As to all counts, it was further alleged that appellant had suffered one prior serious or violent "strike" conviction (§§ 1170.12, subds. (a)-(d), 667, subds. (b)–(i)) that also qualified as a prior serious felony conviction. (§ 667, subd. (a)(1).)

Following a jury trial, appellant was convicted of second degree murder as to count 1, and the lesser included offense of voluntary manslaughter as to count 2. The jury found true the allegation that, as to count 1, appellant personally and intentionally

---

[2]      Espinosa was also charged with counts 2 and 3. Pursuant to a plea agreement, Espinosa received a 30-year prison sentence in exchange for his testimony against appellant.

discharged a firearm which proximately caused great bodily injury and death. It acquitted appellant of count 3 and found the remaining special allegations not true. The court found true the allegation that appellant had suffered a prior conviction for robbery in 2005. It sentenced appellant to 60 years to life in prison for count 1, and a consecutive term of 22 years for count 2. It ordered appellant to pay various fines and fees and awarded him 1,339 days of custody credit.

This timely appeal followed.

## DISCUSSION

### I

Pointing to the well-established rule that involuntary manslaughter is a lesser included offense to murder (*People v. Ochoa* (1998) 19 Cal.4th 353, 422), appellant argues that gross vehicular manslaughter (§ 192, subd. (c)(1))[3] and misdemeanor vehicular manslaughter (§ 192, subd. (c)(2))[4] also are lesser included offenses to murder.

---

[3] CALCRIM 592 Gross Vehicular Manslaughter states in pertinent part:
"To prove that the defendant is guilty of gross vehicular manslaughter, the People must prove that:
"1. The defendant (drove a vehicle/operated a vessel);
"2. While (driving that vehicle/operating that vessel), the defendant committed (a/an) (misdemeanor[,]/[or] infraction[,]/ [or] otherwise lawful act that might cause death) with gross negligence; . . .
"AND
"4. The defendant's grossly negligent conduct caused the death of another person."

[4] CALCRIM 593 Misdemeanor Vehicular Manslaughter states in pertinent part:
"To prove that the defendant is guilty of vehicular manslaughter with ordinary negligence, the People must prove that:
"1. While (driving a vehicle/operating a vessel), the defendant committed (a misdemeanor[,]/[or] an infraction[,]/ [or] lawful act in an unlawful manner);
"2. The (misdemeanor[,]/ [or] infraction/ [or] otherwise lawful act) was dangerous to human life under the circumstances of its commission;
"3. The defendant committed the (misdemeanor[,]/ [or] infraction/ [or] otherwise lawful act) with ordinary negligence;
"AND
"4. The (misdemeanor[,]/ [or] infraction/ [or] otherwise lawful act) caused the death of another person."

Thus, he argues, the trial court had a sua sponte duty to instruct the jury as to these offenses.

"'"It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.] The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given. [Citations.]'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154–155.)

The parties have not pointed to, and we have not found, published authority holding that vehicular manslaughter under Penal Code section 192, subdivision (c) constitutes a lesser included offense to murder. However, the Supreme Court was presented with a similar question in *People v. Sanchez* (2001) 24 Cal.4th 983 (*Sanchez*), disapproved on another ground in *People v. Reed* (2006) 38 Cal.4th 1224. In *Sanchez*, the court held that gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)) is not a lesser included offense to murder. (*Sanchez* at p. 985.) This is because, when comparing the elements of murder to the elements of gross vehicular slaughter while intoxicated, "it appears . . . that the statutory elements of murder do not include all the elements of the lesser offense. Gross vehicular manslaughter while intoxicated requires proof of elements that need not be proved when the charge is murder, namely, *use of a vehicle and intoxication*." (*Id.* at p. 989, italics added.)

Appellant contends that *Sanchez* is inapplicable to this case because the court was "careful to limit its holding to section 191.5, which involves a homicide committed by a drunk driver." We disagree as we find no indication that the court intended to limit its holding so narrowly. The reasoning in *Sanchez* is applicable in this context because the

5

court identified intoxication *and* use of a vehicle as "elements that need not be proved when the charge is murder . . . ." (*Sanchez*, *supra*, 24 Cal.4th 983, at p. 989.) The fact that intoxication is not an element of the offenses at issue is of no consequence. Use of a vehicle is an element of gross vehicular manslaughter and misdemeanor vehicular manslaughter. Under the reasoning of *Sanchez*, a crime that "requires proof that the homicide was committed 'in the driving of a vehicle'" cannot constitute a lesser included offense to murder. (*Ibid.*)

Appellant also argues that *Sanchez* does not apply because it relied largely on the fact that gross vehicular manslaughter while intoxicated (§ 191.5), enacted in 1986, was a new crime and thus "did not fall within the 'general' or 'well-established' 'tradition' or 'pedigree' of manslaughter." Appellant notes that, in contrast, the vehicular manslaughter statute pertinent to this case was enacted in 1935 and has "long since part of the 'well established' tradition of manslaughter . . . ." However, the court's observations about the relatively recent enactment of section 191.5 were not determinative; they were made to distinguish the facts of *Sanchez* from those of *People v. Ortega* (1998) 19 Cal.4th 686 (*Ortega*), a case which found that grand theft is a lesser included offense to robbery: "Finally, to the extent that our opinion in *Ortega* relied upon an historical practice supporting the general principle that all forms of theft are included within the crime of robbery, the present case also may be distinguished. Although we recognize that historically manslaughter in general has been considered a necessarily included offense within murder, that long and settled tradition has not extended to more recently enacted forms of vehicular manslaughter that require proof of additional elements." (*Sanchez*, *supra*, 24 Cal.4th at p. 992, fn. omitted.) The court's reference to the recent enactment of section 191.5 does not affect the ultimate holding of the case: to constitute a lesser included offense, the offense may not require proof of additional elements. (*Id.* at p. 992.) We also note that the involuntary manslaughter statute specifically excludes "acts committed in the driving of a vehicle." (§ 192, subd. (b).) This suggests a legislative intent to classify vehicular manslaughter offenses as separate and distinct from involuntary manslaughter, requiring proof of an additional

6

element of the use of a vehicle.

In support of his argument that vehicular manslaughter is a lesser included offense to murder despite the additional required showing of the use of a vehicle, appellant points to *Ortega*, *supra*, 19 Cal.4th 686, disapproved on other grounds in *People v. Reed* (2006) 38 Cal.4th 1224. In *Ortega*, the Supreme Court considered whether grand theft of an automobile is a lesser included offense of robbery. (*Id.* at pp. 698–699.) It reasoned that grand theft of an automobile is "not a separate offense, but simply a higher degree of the crime of theft." (*Id.* at p. 696, fn. omitted.) It held: "Because theft is a necessarily included offense of robbery [citation], it follows that both degrees of theft, grand and petty, are necessarily included offenses or robbery" even though it is possible to commit robbery without committing grand theft. (*Id.* at p. 697.)

*Ortega* was distinguished in *Sanchez*. *Sanchez* found that "[g]ross vehicular manslaughter while intoxicated . . . is not simply a degree of murder. . . . [it] requires proof of *additional elements* that are not included in the offense of murder or in other forms of nonvehicular manslaughter." (*Id.* at p. 992.) Similarly, gross vehicular manslaughter and misdemeanor vehicular manslaughter are not different degrees of murder, but separate crimes requiring a showing of a separate *element* apart from that of murder—namely, the use of a vehicle. Although appellant argues that use of a vehicle is "a mere circumstance, not an element of the lesser crime . . . ." *Sanchez* similarly disposed of that argument. It explicitly disapproved of *People v. Garcia* (1995) 41 Cal.App.4th 1832 and *People v. Watson* (1983) 150 Cal.App.3d 313, which held that use of a vehicle and intoxication are mere circumstances relating to punishment, not elements to the offense. (*Sanchez*, *supra*, 24 Cal.4th at p. 990.) *Sanchez* found that *Garcia* and *Watson* "stray[ed] too far from the general principle that an offense is necessarily included within a greater offense when the greater offense cannot be committed without committing the lesser offense" (*ibid.*) and stated that use of a vehicle and intoxication are

elements of gross vehicular manslaughter while intoxicated. (*Id.* at p. 989.)[5] Appellant's contention that use of a vehicle is not an element of gross vehicular manslaughter and misdemeanor vehicular manslaughter is not well taken.

Because we find the trial court was not required to instruct the jury on gross vehicular manslaughter and misdemeanor vehicular manslaughter as lesser included offenses to murder, we do not conduct a harmless error analysis. (See *People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1103.)

## DISPOSITION

The judgment is affirmed.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.



EPSTEIN, P. J.


We concur:



WILLHITE, J.



COLLINS, J.


---

[5] Appellant also argues that *Sanchez* treated "use of a vehicle and intoxication" as one element. We disagree, as the opinion refers to the two requirements as "elements" several times. (See, e.g., *Sanchez*, 24 Cal.4th at p. 989 ["The lesser offense contains crucial elements of proof that are absent from the greater offense . . . ."; *id.* at p. 991 ["Unlike manslaughter generally, vehicular manslaughter while intoxicated requires proof of elements that are not necessary to a murder conviction.]")