[No. 20074.  In Bank. — May 31, 1886.]

THE PEOPLE, RESPONDENT, *v.* FONG AH SING, APPELLANT.

NEW TRIAL — NEWLY DISCOVERED EVIDENCE. — Where the evidence given on the trial is conflicting, newly discovered evidence merely cumulative will not warrant a new trial.

PRACTICE — JUROR — NON-RESIDENCE — GENERAL CHALLENGE FOR CAUSE — EXCEPTION. — A challenge to a juror on the ground that he is not qualified to serve by reason of his non-residence in the county in which the trial is had is a general challenge for cause, for the disallowance of which no exception is provided for by the Penal Code.

CRIMINAL LAW — INTERPRETER MAY BE WITNESS. — A person appointed to act as an interpreter on the trial of a criminal action is not disqualified by reason of the fact that he was a witness for the prosecution.

ID. — EVIDENCE — QUESTION. — On the examination of a witness, counsel cannot insert in a question a statement as having been made by the witness which had not in fact been made by him.

ID. — LEADING QUESTION — DISCRETION. — It is within the discretion of the trial court to allow leading questions to be put to a witness on his examination in chief.

ID. — MURDER — DYING DECLARATIONS — WRITTEN STATEMENT — PAROL EVIDENCE. — In a prosecution for murder, where dying declarations of the deceased have been reduced to writing, parol evidence is admissible to show the condition of deceased when the declarations were made. Such evidence does not add to or contradict the written statement.

ID. — ENTIRE CONTEXT OF DECLARATION MUST BE GIVEN. — A statement in a dying declaration disconnected from the context, and contradictory to the general import thereof, is inadmissible in evidence unless the whole of the context is given.

ID. — ADMISSIBILITY OF DYING DECLARATIONS. — Dying declarations to be admissible must relate to the act of killing or to the circumstances immediately attending it and forming part of the *res gestæ*.

ID. — EVIDENCE — IMMATERIAL ERROR. — The refusal of the court to permit a proper question to be answered is not a material error if the witness in another portion of his testimony fully answers the question.

ID. — IMPEACHMENT OF WITNESS — EVIDENCE OF HOSTILITY. — On a trial for murder, where the defendant is proved to have been previously arrested and charged with arson, a question as to who instigated the arrest is inadmissible in the absence of evidence or the offer of evidence connecting any witness for the prosecution with the arrest.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*L. Quint,* for Appellant.

*Attorney-General Marshall,* for Respondent.

McKINSTRY, J. — The defendant was found guilty of murder of the first degree, and his motion for a new trial was denied. He has appealed from the judgment and order.

The motion for a new trial was based on the ground, amongst others, of newly discovered evidence. The de-

fendant has been twice tried and convicted, and the new evidence was discovered, as is alleged, after the second trial. One of the affidavits is to the effect that the defendant was known to the affiant; that affiant was present when the deceased was shot, and is quite certain the shot was not fired by the defendant. Another affidavit corroborates many of the principal statements of the first. A third states certain circumstances tending to support the averments contained in the others.

Kwong Ah Him, Leong Ah Ngow, and Harm Ma Look, witnesses for the prosecution, swore at the trial that they saw the defendant fire the shot which killed the deceased. Hoong Ah Karng testified to the defendant's retreat from the place where the shot was fired, and that he threw away a pistol, which the witness picked up. The deceased in her dying declaration identified the defendant as her slayer.

At the trial, Chum Sun, a witness for the defense, testified positively that the defendant was not the person who fired the shot; that such person was dressed differently from the manner in which other evidence tended to show the defendant was dressed on the evening when the killing occurred, and was about a head shorter than defendant. Edward Durham, called by the defense, testified that the person who fired the shot was smaller and shorter than the defendant. Both he and Chum Sun swore that the person who fired the shot fled toward Pacific Street; therein differing from other witnesses for defendant, and from the affidavits of the newly discovered witnesses, which state that he went in another direction. The defendant testified that he was not present when the shot was fired.

The evidence alleged to be newly discovered was strictly cumulative. It is well settled that in cases of conflicting testimony, newly discovered evidence merely cumulative will not furnish ground for new trial. Even if a case can be supposed where, although the evidence

be merely cumulative, a new trial should be granted, the circumstances here presented cannot be justly claimed to constitute an exception to the rule. We cannot say but that the court below was justified in its action with reference to the alleged newly discovered evidence.

Appellant contends that the juryman Prentis Selby was not qualified to serve as such. The challenge to the juror was on the ground that he was not a resident of the city and county of San Francisco when the trial was had.

A challenge for cause is an objection to a particular juror, which is either general,—that he is disqualified from serving in any case; or particular,—that he is disqualified from serving in the action on trial. (Penal Code, sec. 1071.) The Penal Code provides for no exception to the action of the court in disallowing a general challenge for cause to an individual juror. (Penal Code, sec. 1170.)

We must assume that Louis Locke possessed the necessary knowledge of the English and Chinese language, and that he discharged the duties of interpreter fairly and impartially; that he was a witness for the prosecution did not of itself disqualify him.

Appellant claims that the court below erred in not permitting that portion of the following question to the witness Hong Ah Kwong which is inclosed in brackets: "Do you say you saw Fong Ah Sing run down the street, heard a shot, and you saw him throw that pistol away [and you heard a woman was shot], and that you heard nothing more, or knew nothing more about the case?"

The court said: "That part where 'you heard the woman was shot' is unauthorized and improper. The witness testified he did not know of it for a long time after." And the witness then said: "It was over a week after that I first learned that Choy Cum, the woman on Cum Cook Alley, had been shot," etc. When the question was put to the witness, and before the remark of the

judge, counsel for the prosecution said: "He did not say he heard the woman was shot, but on the trial [*sic*] he did not hear it until a long time after." We think the court was justified in holding that counsel for defendant was not authorized to insert in a question a statement as having been made by the witness which had not in fact been made by him. But even if the remark of the judge was irregular, defendant did not except to the remark, but to the disallowance of part of the question.

During the examination of the witness Louis Locke, he testified that before the taking down of the dying declaration of the deceased, she was asked if she thought she would live. She replied, "No; I am dying now. Don't you see I am dying?" And afterward the witness Locke was asked: "And then she was asked, 'Do you expect to live?' and she said, 'What?'" This question was objected to by counsel for defendant as leading, improper, and incompetent. The objection having been overruled, the witness answered: "Do you think you will live?" She said, "No; I am dying now. Don't you see I am dying?" Here was no error. The matter of the form of a question is in the discretion of the trial court. Moreover, the witness had made the same statement in response to a question *not* leading.

Nor, as suggested, was this adding to or contradicting the written statement. The testimony related to the condition of the witness when the alleged dying declarations were made.

There was sufficient foundation in the evidence for the admission of the declaration in writing.

Counsel objected to the introduction of the written statement, unless the whole of it was introduced, or unless that portion of it should be given to the jury which reads, "I don't know any reason that Fong Ah Sing had for shooting me."

When the case was here on the former appeal, it was held that the following portion of the dying declaration

was inadmissible: "I don't know of any reason that Fong Ah Sing had for shooting me, *unless it was* that a few days before the shooting I was bathing my feet upstairs over a room in which Fong Ah Sing was sitting, and spilled a little water on the floor, and it leaked through and fell upon Fong Ah Sing. Fong Ah Sing was very angry thereat, and told the proprietor of the house that I must apologize and make him some present, to prevent bad luck coming upon the house. The proprietor did make some little present to Fong Ah Sing, and I supposed the matter was settled." (64 Cal. 255, 256.)

It would seem manifest that as the whole of the foregoing is connected, and when taken together is a statement that deceased did know of a fact which might have constituted a cause for the shooting, a portion of it which, taken separate from the context, would imply that she knew of no reason for the shooting was not admissible. Besides, dying declarations are restricted to the act of the killing, and to the circumstances immediately attending it and forming a part of the *res gestæ*. (64 Cal. 255, 256.)

During the examination of the defendant as a witness, he was asked by his counsel, "What society, or what branch of the Chinese societies, were arraigned [*sic*] against your society?"

The court sustained an objection to the question.

The witness, however, testified that there was a feud between the Duck Kong Tong Society, to which he belonged, and the Gee Gong Tong Society. And in another place: "I never stay very much in Chinatown, except walk along, because I have lots of enemies against me because I am the interpreter of the society. The Gee Gong Tong Society is against ours."

The question was fully answered.

The witness Morton, called by the defendant, testified that he was a resident of Vallejo and a constable. Counsel for defendant asked of him, "Do you know of defend-

ant being arrested and charged there in Vallejo with arson?" To which the witness answered affirmatively. He was asked, "At whose instigation?" The prosecution objected to the last question; the court sustained the objection, and the defendant excepted to the ruling.

*Prima facie,* the question was irrelevant. Counsel for defendant did not offer to prove that the arrest for arson was instigated or brought about by any witness for the prosecution, or any organization or society hostile to the defendant with which any witness for the prosecution was connected. It would be difficult to say that if this had been shown it would have tended to establish a conspiracy to pursue the defendant upon a false charge of murder. And in the absence of evidence or offer of evidence connecting any witness for the people in this action with the arrest at Vallejo, the answer to the question could not have tended to destroy the credibility of any witness herein.

Judgment and order affirmed.

SHARPSTEIN, J., ROSS, J., MYRICK, J., MORRISON, C. J., THORNTON, J., and McKEE, J., concurred.

Rehearing denied.