Filed 7/18/13  P. v. Ryan CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RALPH MONTECINO RYAN,<br><br>    Defendant and Appellant. | D062266<br><br><br><br>(Super. Ct. No. FSB055511) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Arthur Harrison, Judge.  Affirmed.

Rodger P. Curnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Ralph Montecino Ryan of murdering James Ramirez and found true several enhancements.  This court reversed the judgment and remanded the matter to

allow Ryan's newly retained or appointed counsel a reasonable opportunity to fully investigate and present a new trial motion. (*People v. Ryan* (May 27, 2009, D054601) [nonpub. opn.] (Prior Opinion).) After the trial court denied Ryan's new trial motion, Ryan sought relief in a petition for writ of habeas corpus, asserting he received ineffective assistance because his counsel filed the motion without reviewing the trial transcripts. (*People v. Ryan* (June 20, 2011, D057179) [nonpub. opn.].) We granted relief and directed the trial court to appoint new counsel and allow counsel to present a new trial motion. (*Ibid.*) Ryan subsequently requested release of personal juror identifying information and moved for a new trial. The trial court denied both motions.

Ryan appeals, contending (1) the trial court abused its discretion in denying his request for juror information and in failing to order an evidentiary hearing, (2) the trial court erred in denying his new trial motion because there was a reasonable probability of a different outcome based upon newly discovered evidence, (3) the trial court erred in excluding evidence of the victim's methamphetamine impairment, and (4) there was insufficient evidence to support his murder conviction. We reject these contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

We adapt this introductory factual statement from our Prior Opinion:

"The witnesses gave varying testimony and some recanted their earlier statements to police when they testified at trial; however, viewed in the light most favorable to the judgment, the evidence was as follows.

2

"West Side Verdugo is a large Hispanic criminal street gang in San Bernardino with a number of cliques, including the Lil Counts gang, which has a long-standing rivalry with the Florencia 13 gang. [Ryan and Henry Ruiz (together defendants)] are West Side Verdugo and Lil Counts gang members and victim Ramirez had an affiliation with Florencia 13.

"Ramirez lived in an apartment complex located on Fairfax Drive, an area controlled by the Lil Counts gang. At about 2:00 or 3:00 a.m. on April 20, 2005, Ramirez was sitting in a chair inside the downstairs apartment of Araseli Ochoa with Mario Chan, sisters Tabitha and Samantha Ferguson, a Lil Counts gang member known as Joker and several other people. They were all either, drinking or smoking marijuana and methamphetamine. When Ochoa was younger, she considered herself to be a member of the West Side Verdugo gang.

"Chan left the apartment and then walked back inside, followed by the two defendants. Each defendant had a Bud Light beer bottle in one hand and a gun in the other hand. Ruiz slapped Ramirez and told him that outsiders did not belong; defendants then fired at Ramirez, killing him, and ran outside.

"Defendants were charged with first degree murder, personally discharging a firearm causing great bodily injury or death and personally and intentionally using and discharging a firearm resulting in death during the commission of a crime. It was also alleged that they committed the crime for the benefit of a gang and that Ruiz had suffered a prior felony conviction.

3

"The matter proceeded to trial and a jury heard testimony that about two weeks before the shooting, Ochoa had an altercation with Ruiz because Ruiz did not want Ramirez in her house. The jury also learned that Chan had heard defendants engage in rival gang conversation with Ramirez and that Ruiz and Ramirez had threatened each other.

"Marco Granado, a gang expert for the San Bernardino Police Department, testified that a person openly identifying himself as a Florencia 13 member living in a Lil Counts neighborhood such as Fairfax would need to be addressed by Ruiz as the "shot-caller" for the Lil Counts gang. He also testified that people are often afraid to testify against members of West Side Verdugo or Lil Counts because of possible retaliation against themselves or their family, including death. When asked why some witnesses appeared reluctant to identify Ryan, Granado explained that when gang assaults occur in front of witnesses who are also gang members, the witnesses might implicate the person who actually committed the assault, but try to protect any other gang members with that person.

"An autopsy revealed that Ramirez suffered a scalp abrasion and had been struck by three bullets, one of which penetrated his heart and lungs. Inside Ochoa's apartment, police recovered several .380 caliber cartridge casings, which a ballistics expert determined had been fired from a single weapon. Police also recovered a loaded nine millimeter cartridge that appeared to have come from a different weapon. Police found a carton containing Bud Light bottles behind a nearby carport and two similar bottles inside Ochoa's apartment. One of the bottles inside the carton contained Ryan's fingerprints.

4

The police also found more Bud Light bottles when they searched Ruiz's living room and bedroom.

"Ruiz testified in his own defense. He claimed that on the evening of April 19, he went to a club with Ryan, his wife and other friends and that he got home at about 2:00 the following morning. He then went to another friend's house after his wife fell asleep. Ruiz admitted knowing Ramirez, but claimed he had no "problems" with him and did not know who killed him or why. He denied being a "shot-caller" or an active gang member. He claimed that he had been drinking with Ryan in the early morning hours of April 20 and that was why Ryan's fingerprints were found on a bottle. He admitted that after the murder he left his apartment, never went back and avoided law enforcement until police found him a couple months later.

"[A] jury found defendants guilty as charged and found all enhancement allegations to be true, except the allegations that Ryan had personally and intentionally discharged a firearm resulting in death. The trial court sentenced Ryan to state prison for a total term of 50-years-to-life and imposed certain restitution fines."

DISCUSSION

I. *Request for Release of Juror Information*

A. Background

Ryan moved to disclose personal juror information. He supported his motion with a declaration from his counsel. In that declaration, counsel stated that "[w]hile investigating the case, reviewing the transcripts and speaking to all those with direct knowledge of what occurred during the jury trial, it was brought to [his] attention that

5

[Ryan] has claimed one of the jurors fell asleep during his trial. This suggests juror partiality and concealment of such partiality during voir dire and during the trial." Ryan offered a "proposed letter from judge to jurors" which asked the jurors to respond as to whether they were willing to discuss their jury service with Ryan's attorney.

The trial court denied Ryan's request for juror information, stating it was "going to exercise [its] discretion because of the nature of the case, the conduct that was part of the case, conduct in front of a number of other witnesses, [and] the possibility of intimidation towards jurors." The court also noted that it was "confident jurors were not sleeping to any great extent" and Ryan's request amounted to a "fishing expedition."

B. Analysis

Ryan argues the trial court abused its discretion in denying his request for juror information and failing to order an evidentiary hearing. We reject this argument.

A criminal defendant may petition for access to personal juror identifying information—their names, addresses and telephone numbers—when the sealed information is "necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose." (Code Civ. Proc., § 206, subd. (g).) The petition must be supported by a declaration that includes facts sufficient to establish good cause for the release of the information. (Code Civ. Proc., § 237, subd. (b).) If the court determines the petition and supporting declaration establish a prima facie showing of good cause for release of the juror information, the court must set a hearing, unless the record establishes a compelling interest against disclosure. (*Ibid*.)

6

To demonstrate good cause, a defendant must make a sufficient showing "'to support a reasonable belief that jury misconduct occurred.'" (*People v. Jones* (1998) 17 Cal.4th 279, 317.)  The alleged misconduct must be "'of such a character as is likely to have influenced the verdict improperly.'" (*People v. Jefflo* (1998) 63 Cal.App.4th 1314, 1322.)  Good cause does not exist where the allegations of jury misconduct are speculative, conclusory, vague, or unsupported.  (*People v. Wilson* (1996) 43 Cal.App.4th 839, 852.)  We review an order denying a request for personal juror identifying information for abuse of discretion.  (*People v. Jones*, at p. 317.)

Here, Ryan contends he made a prima facie showing of good cause based on the declaration from his counsel.  However, counsel's declaration consisted solely of a vague, conclusory and unsupported statement that Ryan had claimed at some point that a juror fell asleep during his trial.  Ryan did not provide any details to support a reasonable belief that misconduct occurred, such as at which point during the proceedings the juror allegedly fell asleep, for how long or who observed the behavior.  Further, Ryan's counsel failed to indicate how he learned that a juror fell asleep.  Instead, he merely stated, "[I]t was brought to [his] attention."  Notably, Ryan did not provide a supporting declaration regarding his claim.  Under these circumstances, we conclude the trial court acted well within its discretion in denying Ryan's request for juror information because Ryan did not establish a prima facie showing of good cause.  Absent a prima facie showing of good cause, the trial court was not required to hold a hearing.

Lastly, we reject Ryan's claim that the trial court applied an improper standard or failed to make a finding on whether Ryan established "good cause."  The trial court stated

7

Ryan's request amounted to a "fishing expedition" and set forth compelling reasons for nondisclosure, including jurors' concerns for their safety and possible intimidation. Based on our review of the record, we find no indication that the trial court utilized an incorrect standard in considering Ryan's request.

## II. *Newly Discovered Evidence*

### A. Background

During trial, Ruiz's counsel sought to introduce evidence that Justin Kirk, a West Side Verdugo gang member facing capital charges in Riverside County, had confessed to Ramirez's murder and was willing to testify. The court held an Evidence Code section 402 hearing with Kirk, but Kirk asserted his rights under the Fifth Amendment and refused to testify. Defense counsel later sought to introduce a written summary of Kirk's interview with detectives and written summaries of telephone calls that Kirk made from jail.

In our Prior Opinion, we set forth the substance of Kirk's interview with detectives and the telephone calls. (Prior Opinion, at pp. 5–7.) In sum, Kirk suggested in the calls that he wanted to obtain details about Ramirez's murder and that he was going to confess to the crime. During a police interview, Kirk stated he committed the murder but provided little details or specifics about it. The trial court excluded the evidence, concluding it was inadmissible because it lacked sufficient indicia of reliability. On appeal, we concluded the trial court did not abuse its discretion in excluding the evidence. (Prior Opinion, at p. 9.)

8

In conjunction with his new trial motion, Ryan called Kirk as a witness. Kirk again asserted his rights under the Fifth Amendment and refused to testify. Thereafter, Ryan presented testimony from his defense investigator, Richard Lonsford. Lonsford testified he interviewed Kirk in prison in 2012. During that interview, Kirk stated Ryan was not present during Ramirez's murder; instead Kirk was with Ruiz during the crime. Contrary to Kirk's 2005 police interview wherein he stated he shot Ramirez, Kirk now told Lonsford that Ruiz was the shooter.

The trial court ruled Kirk's statements to Lonsford did not constitute new evidence to support a new trial, lacked reliability, and would not be admissible as declarations against penal interest.

B. Analysis

Ryan argues the trial court erred in denying his new trial motion because there was a reasonable probability of a different outcome based upon Lonsford's testimony concerning Kirk's statements, which constituted newly discovered evidence. Specifically, Ryan claims Kirk's statements contradict the prosecution's theory that Ryan was present with Ruiz during the crime. We reject Ryan's contentions.

A trial court "may, upon [a defendant's] application, grant a new trial" when "new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial." (Pen. Code, § 1181, subd. 8.) For a court to grant a new trial on this ground, the newly discovered evidence must not "simply corroborate[] the defendant's story" (*People v. Cooper* (1979) 95 Cal.App.3d 844, 852) or "contradict a witness of the opposing party" (*People v. Hall* (2010) 187

9

Cal.App.4th 282, 299).  Nor is a new trial warranted if the new evidence is "merely cumulative" (*People v. Fong Ah Sing* (1886) 70 Cal. 8, 10; *People v. Butts* (1965) 236 Cal.App.2d 817, 827) or "merely impeaching in character" (*People v. Snyder* (1940) 36 Cal.App.2d 528, 535).  Rather, to justify a new trial, the " 'newly discovered evidence . . . must make a different result probable on retrial.' "  (*People v. Verdugo* (2010) 50 Cal.4th 263, 308.)  To determine whether a different result is likely on retrial, " 'the trial court may consider the credibility as well as materiality of the evidence.' "  (*People v. Delgado* (1993) 5 Cal.4th 312, 329 (*Delgado*).)

On appeal from an order denying a motion for new trial, we apply the deferential abuse of discretion standard.  (*Delgado*, *supra*, 5 Cal.4th at p. 328.)  " '[W]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence.' "  (*People v. Verdugo*, *supra*, 50 Cal.4th at p. 308.)  In addition, "we justifiably accord considerable deference to the trial judge 'because of "his observation of the witnesses, [and] his superior opportunity to get 'the feel of the case.' " ' "  (*People v. Hayes* (1985) 172 Cal.App.3d 517, 524–525.)

Here, Ryan's proffered evidence was not "newly discovered."  To the contrary, similar evidence regarding Kirk's alleged confession was considered and excluded by the trial court during Ryan's trial.  Although Kirk's statements to Lonsford vary somewhat from his 2005 police interview, the essence of the statements was the same.  Kirk previously claimed that he was responsible for the shooting and merely changed his story to indicate Ruiz was the shooter.

10

In any event, even assuming the evidence was newly discovered, it is unlikely that the evidence would have rendered a different result at trial. Although "[n]umerous cases hold that a motion for a new trial should be granted when the newly discovered evidence contradicts the strongest evidence introduced against the defendant" (*People v. Martinez* (1984) 36 Cal.3d 816, 823), Kirk's statements to Lonsford were simply a variation of Kirk's earlier confession and, like his earlier statements, were inadmissible because they were not trustworthy. (Prior Opinion, at pp. 8–9.) Moreover, "'the trial court may consider the credibility as well as materiality of the evidence in its determination [of] whether introduction of the evidence in a new trial could render a different result reasonably probable.'" (*Delgado*, *supra*, 5 Cal.4th at p. 329.) Kirk's statements to Lonsford contradicted his earlier police interview and were devoid of facts regarding the murder. Further, in 2005, Kirk attempted to obtain details about the murder, suggesting he was going to take responsibility for a crime he did not commit. Accordingly, the trial court was well within its discretion in finding that the proffered evidence lacked credibility, and implicitly finding that it was not probable it would have rendered a different result on retrial.

### III. *Exclusion of Evidence*

Ryan argues the trial court erred in denying his new trial motion because it erroneously excluded evidence that the victim was under the influence of methamphetamine at the time of the murder. He contends the evidentiary ruling deprived him of his right to fully present a defense based on heat of passion or imperfect self defense. We disagree.

11

An unlawful killing with malice aforethought, premeditation, and deliberation constitutes first degree murder, whereas the absence of premeditation and deliberation reduces the crime to second degree murder. (*People v. Bohana* (2000) 84 Cal.App.4th 360, 368.) Premeditation and deliberation may be negated by such factors as heat of passion or intoxication so as to reduce the crime to second degree murder. (*People v. Wickersham* (1982) 32 Cal.3d 307, 329–330.) A killing may further be reduced to voluntary manslaughter when the absence of malice is shown by heat of passion arising from provocation by the victim that would cause a reasonable person to react with deadly passion, or an unreasonable but good faith belief in the need to act in self defense. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1143–1144; *People v. Lasko* (2000) 23 Cal.4th 101, 108.)

A defendant's constitutional right to present a defense requires admission of all " 'relevant and material'" evidence. (*People v. Babbitt* (1988) 45 Cal.3d 660, 684.) A trial court's discretionary power to exclude evidence under Evidence Code section 352 "must yield to a defendant's due process right to a fair trial and to the right to present all relevant evidence of *significant* probative value to his or her defense." (*People v. Cunningham* (2001) 25 Cal.4th 926, 998–999.) A trial court's discretionary ruling under Evidence Code section 352 will not be disturbed unless the court acted in an "arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice[.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)

Here, police found a knife or sheath underneath the victim's body. Ryan contends that with this evidence combined with evidence of the victim's methamphetamine

12

impairment, "the defense could have set forth a reasonably plausible argument that the homicide was the lesser offense of voluntary manslaughter." However, for voluntary manslaughter, both provocation and actual heat of passion must be demonstrated. (*People v. Gutierrez*, *supra*, 28 Cal.4th at p. 1143.) There was no evidence of provocation in this case or that the victim even brandished the knife. The evidence revealed that although the victim had a knife with him, he never grabbed for it, with one witness stating, "He didn't even have a chance." Based on the foregoing, we conclude the trial court did not err in excluding evidence of the victim's methamphetamine impairment.

### IV. *Sufficiency of the Evidence*

Ryan argues the trial court erred in denying his new trial motion because there was insufficient evidence to support his murder conviction. Specifically, he contends the court did not independently weigh the evidence, and if it had done so, it would have concluded there was insufficient evidence of his presence at the crime scene and that he aided and abetted the murder. We disagree.

In deciding a new trial motion, the trial court weighs the evidence independently to determine whether there is sufficient credible evidence to support the verdict, but is guided by a presumption in favor of the correctness of the verdict. (*People v. Davis* (1995) 10 Cal.4th 463, 523–524.) In determining whether the verdict is contrary to the evidence, the court is confined to evidence that was before the jury. (*People v. Moreda* (2004) 118 Cal.App.4th 507, 514.) On appeal, we indulge a strong presumption that the court properly exercised its discretion. (*People v. Davis*, at p. 524.)

13

Ryan argues the trial court did not independently weigh the evidence because it concluded "there was ample evidence upon which the jury could determine that Mr. Ryan was present [and] that he participated." The trial court's comments do not indicate that it applied the wrong standard in denying Ryan's new trial motion. Rather, the trial court referenced the jury's findings but also recounted its interpretation of the evidence and reasoning for denying the new trial motion.

Ryan further contends the trial court erred in denying his new trial motion because the evidence was insufficient to support a finding that he was present at the crime scene and aided and abetted the murder. Although the witnesses gave varying testimony and some recanted their earlier statements to police when they testified at trial, at least one witness testified at trial that Ryan was present when the murder took place. Further, Ryan's fingerprints were on beer bottles found near the crime scene and similar bottles were found in the apartment where the murder took place.

Additionally, the evidence showed that Ryan and the victim were in rival gangs. Ryan had previously made threatening statements to the victim and at least one witness testified that Ryan was with Ruiz at the apartment where the murder took place. The evidence revealed that while they were at the apartment, Ruiz lifted his shirt to reveal a gun and then Ryan and Ruiz approached the victim. After a short verbal altercation, Ruiz shot the victim. Ryan and Ruiz both benefitted from the killing of a rival gang member because it showed they were willing to put in the work necessary for the gang to thrive.

It is not our function to reweigh the evidence or the credibility of witnesses. (*People v. Pitts* (1990) 223 Cal.App.3d 606, 884.) Based on the record, we agree with

14

the trial court that there was sufficient evidence to establish Ryan's guilt.  Accordingly, we conclude the court acted within its discretion in denying Ryan's motion for a new trial.

## DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.

15